## S90A0303. GAMBREL v. THE STATE.

(391 SE2d 406)

BENHAM, Justice.

Appellant was convicted, as a party to the crime, of the malice murder of her husband and sentenced to life imprisonment.[1] The ap-

---

[1] The crime occurred on February 22, 1986, and appellant was indicted for murder on August 11, 1988. She was tried March 27-April 4, 1989. The jury returned its verdict on April

peal of her co-conspirator is found in *Kettman v. State*, 257 Ga. 603 (362 SE2d 342) (1987).

1. Contending that the only direct evidence of her involvement in the murder of her husband came from Kettman, her alleged co-conspirator, appellant contends the evidence presented was insufficient to establish her guilt beyond a reasonable doubt.

Kettman, the triggerman, testified that he and appellant had carried on a sexual affair from late December 1984 until January 1986. During that time appellant related to Kettman that the victim was committing incest with the daughter of appellant and the victim; that the victim knew of her relationship with Kettman and was extremely violent toward her and Kettman; that she hated the victim and wished he were dead; and that she did not want Kettman to kill him but to hire a "hit man." Kettman testified that when a hit man he hired was unsuccessful, appellant called him a wimp and a liar. Appellant provided Kettman with $1800 to hire another hit man in late July 1985; called him a liar and a thief, incapable of doing anything right, when the hit man was unsuccessful; and threatened to cut off their sexual relationship if the victim were not dead by August 1. When Kettman stated he needed a long-distance rifle with a scope, appellant placed one owned by her husband in the back of her van and told Kettman where he could find it. When that attempt failed, Kettman suggested attaching a bomb to the victim's truck. Kettman testified that appellant arranged to delay her husband's departure for work, thereby ensuring he would be driving to work by himself, by preparing a large breakfast. After the bomb attempt proved unsuccessful, appellant launched into a verbal tirade against Kettman and said she wanted nothing to do with him. Kettman testified that while they saw less of each other, they kept in touch by telephone and appellant told him that the victim was being rough and that she did not want to live with him. In January 1986, appellant told Kettman they would not have sexual relations again until the victim was dead. When Kettman reported to appellant that he was unable to find a gun, she said he could use the handgun stored in the glove compartment of her van. She also told him how to lure the victim from the house in order to shoot him. Kettman testified that, on the day of the murder, appellant called him and said the victim was "on a rampage" against Kettman and was going to kill him.

Elizabeth Rizzi, the young woman who drove Kettman to and from the site of the murder and who lured the victim out of his house

---

4, and appellant was sentenced to life imprisonment on the same day. Her motion for new trial, filed on May 4, 1989, was denied on September 21, 1989. Appellant filed a notice of appeal on October 11, 1989. The case was docketed in this court on December 4, 1989, and argued February 12, 1990.

with the pretense she was having car trouble, testified that when she told Kettman that she feared appellant had seen her and could identify her, he told her not to worry, that appellant had given him the gun and had helped plan the murder.

A frequent visitor to appellant's hair salon testified that, approximately three months before the victim was killed, he overheard appellant say she wished she could find someone to kill her husband and that she would be a wealthy woman. Another customer of the hair salon testified that appellant, during the time she and Kettman were having an affair, expressed a desire to be rid of her husband and asked the witness if he knew any hit men.

A co-worker of Kettman's testified that in July 1985 Kettman displayed to her $1800 which he said his girl friend had given him to buy a gun with which to kill the girl friend's husband. The co-worker described Kettman as "despondent" during that period of time.

The State also presented tape recordings of conversations between Kettman and appellant during two visits in April and July 1988 that appellant made to the prison in which Kettman was incarcerated following his conviction for the murder of appellant's husband.[2] In those conversations appellant admitted she was "as much responsible for what happened" as Kettman was; that she had had a dream in which the victim appeared to her and told her he had forgiven her and Kettman; that she had put pressure on Kettman; that Kettman had gotten the gun from her; that she would have been in legal trouble had the district attorney found out about the bombing of the victim's truck; that her husband's rifle had been in the back of her van; that Kettman had gotten $1800 from her in July 1985; that she could have explained to inquirers that she had used the $1800 on a "shopping spree" for a hit man; and that she recalled she had told Kettman to have his female companion tell her husband she was a friend of their daughter's and was having car trouble; and that while she was having difficulty remembering everything that had happened, she remembered "enough to know that [she was] partly responsible for what happened."

> Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if [s]he: . . . [i]ntentionally aids or abets in the commission of the crime; or [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime. OCGA § 16-2-20.

---

[2] Kettman agreed to wear a body bug in order that his conversations with appellant could be recorded.

Kettman's testimony concerning appellant's involvement in the murder of her husband, corroborated by the testimony of witnesses who overheard appellant's desire to have her husband killed and by the tape-recorded statements of appellant herself was sufficient evidence of appellant's participation in the crime to permit a rational trier of fact to find her guilty beyond a reasonable doubt of the malice murder of her husband. *Wisenbaker v. State*, 259 Ga. 416 (383 SE2d 132) (1989).

2. Appellant takes issue with the trial court's admission into evidence of the audio tape recordings of appellant's conversations with Kettman. Citing *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207 (88 SE2d 167) (1955), appellant contends the State failed to lay a complete foundation for the admission of the tapes by failing to establish the authenticity and correctness of the recordings.

The chief criminal investigator for the Cobb County District Attorney's office testified that he overheard the conversations between appellant and Kettman as they were being taped; that he subsequently listened to the tape recordings in their entirety, reviewing them in light of what he had heard on the days of taping and in light of the transcripts of the tapes; and that he concluded that the tapes were a full and complete audio transmission of the conversations. The investigator's testimony was sufficient to establish the authenticity and correctness of the recordings. *Page v. State*, 249 Ga. 648 (2b) (292 SE2d 850) (1982). See also *Saunders v. Padovani*, 258 Ga. 866 (2) (375 SE2d 853) (1989); *Central of Ga. R. Co. v. Collins*, 232 Ga. 790 (3) (209 SE2d 1) (1974). The three-month lapse of time between the recordings and the witness' review of the tapes and the witness' inability to use his independent recollection of the conversations to fill in blanks left by the transcriber went to the weight to be given his testimony, not to the sufficiency of the foundation for the admission of the tapes. See *Bowens v. State*, 171 Ga. App. 364 (4) (320 SE2d 189) (1984).

3. Contrary to appellant's assertion, the trial court's pre-evidentiary charge to the jury on OCGA § 16-5-1 (b) was not burden-shifting. *Flynn v. State*, 255 Ga. 415 (2a) (339 SE2d 259) (1986); *Franklin v. State*, 245 Ga. 141 (9) (263 SE2d 666) (1980). The post-evidentiary charge, in which the jury was instructed that malice *may* be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart, being more favorable to appellant than the acceptable statutory charge, is not reversible error.

4. The trial court charged the jury that a killing done in the spirit of revenge for past completed wrongs cannot be justified, and that such a killing is murder. Appellant contends it was error to give the charge inasmuch as she did not raise the defense of justification.

Appellant presented evidence that her late husband had physically abused her and their children; that he had sexually molested one of their daughters; and that she had wanted him dead due to the abuse. Even where a defendant does not raise a particular defense, " ' "[w]here there is any evidence, however slight, upon a particular point, it is not error to charge the law in relation to that issue." ' " *Adams v. State*, 193 Ga. App. 628 (388 SE2d 747) (1989).

5. By failing to object at trial, appellant did not preserve her remaining enumeration of error for appeal. *Prince v. State*, 257 Ga. 84 (7) (355 SE2d 424) (1987).

*Judgment affirmed. Smith, P. J., Weltner, Bell, Hunt, Fletcher, JJ., and Judge Jere F. White concur. Clarke, C. J., disqualified.*

DECIDED MAY 24, 1990.

*Cook & Palmour, Bobby Lee Cook, Hylton B. Dupree, Jr., A. Gregory Poole,* for appellant.

*Thomas J. Charron, District Attorney, Jack E. Mallard, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Richard C. Litwin,* for appellee.