## A96A1793. CHAMBERS v. THE STATE.
(480 SE2d 288)

Judge Harold R. Banke.

William Richard Chambers was convicted of two counts of aggravated assault and possession of a firearm during the commission of a felony. Following the denial of his motion for new trial, Chambers enumerates four errors.

On appeal, the evidence must be viewed in the light most favorable to the verdict. *Rigenstrup v. State*, 197 Ga. App. 176, 181 (4) (398 SE2d 25) (1990). Viewed in that light the State's evidence was as follows. Robert P. Atwater testified that several hours after an earlier confrontation, Chambers and his co-defendant, Kenneth E. Dyers, returned with weapons to the property of James Scott. After Atwater called out to Chambers by name, Chambers began firing at them and Atwater spontaneously hit the ground. Atwater testified that he saw Chambers fire his gun. Between barrages of gunfire, Scott managed to place a 911 call providing police with a description of Chambers' truck. Shortly after Chambers was arrested based on the 911 information, a Gwinnett County police officer discovered five spent .22 shell casings near Scott's driveway. A bullet hole in Chambers' windshield had been created from inside his truck. A firearms examiner testified that the shell casings found at the scene of the shooting matched test fires from the .22 Ruger rifle taken from Chambers' truck at the time of his arrest. *Held*:

1. Chambers' contention that the State failed to prove the chain of custody of the spent .22 shell casings lacks merit. Officer Troy Cook identified the five shell casings as the ones he personally found during a search of Scott's yard. Cook testified that the spent casings appeared to be in the same condition as when he discovered them. Unlike fungible items, distinct physical objects which can be identified upon observation require no custodial proof for their admission. *Hanvey v. State*, 186 Ga. App. 690, 693 (6) (368 SE2d 357) (1988). See *Harper v. State*, 251 Ga. 183, 185 (1) (304 SE2d 693) (1983).

2. We find no merit to Chambers' contention that the trial court erred in admitting an audio tape of the 911 call on the ground that the State did not prove its authenticity. See *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207, 211-212 (3) (88 SE2d 167) (1955); compare *Gambrel v. State*, 260 Ga. 197, 200 (2) (391 SE2d 406) (1990).

Prior to offering a copy of the 911 recording, the State presented the testimony of Melanie Woodall, the 911 dispatcher who processed the call, and James Scott, Chambers' victim, who initiated the call. Woodall's contemporaneous notes which described and corroborated the underlying facts were admitted as a separate exhibit. Woodall testified that as she handled the emergency call, she heard the sound of gunshots being fired in the background. Both Woodall and Scott

listened to the tape in its entirety, and attested that the copy was an accurate reproduction without any changes, additions, or deletions.

Despite the State's evidentiary foundation, Chambers argues that the trial court erred in admitting a copy not made from the original reel-to-reel recording but created from a duplicate tape. Notwithstanding Chambers' argument to the contrary, we find that the State's foundation under these circumstances was sufficient to establish the recording's authenticity. *Lee v. State*, 204 Ga. App. 283, 284 (4) (418 SE2d 809) (1992); *Bennett v. State*, 169 Ga. App. 85, 87 (2) (311 SE2d 513) (1983).

3. Chambers alleges that two ex parte discussions between the trial court and the prosecutor amounted to judicial comment on the evidence and bolstered the State's credibility. He asserts that the trial court erred by failing to give curative instructions regarding those conversations. The transcript shows that near the end of the trial, Chambers' counsel voiced a concern about the possible appearance of judicial impropriety based on the fact that the trial court in the presence of the jury had twice called the prosecutor to the bench to participate in ex parte conferences. Counsel raised an objection and requested a curative instruction. After the trial court clarified that the brief discussions were unrelated to the trial and pointed out that the jury might react negatively to a curative instruction, Chambers' counsel then stated, "Well, Judge, I can live with ignoring it, if it doesn't happen again." No curative instruction was then sought or motion made.

Assuming the issue was not waived by counsel's subsequent statement, OCGA § 17-8-57 reaches only remarks made before the jury. Here, there were none. *Dukes v. State*, 186 Ga. App. 773, 774 (3) (369 SE2d 257) (1988). Because the trial court made no comments to the jury, there was no violation of OCGA § 17-8-57 and no need for a curative instruction. See *Jones v. State*, 250 Ga. 498, 499-500 (4) (299 SE2d 549) (1983). In light of a defendant's paramount right to a fair trial which is the foundation of OCGA § 17-8-57, the better practice would be to avoid all ex parte conversations of this nature.

4. The evidence was sufficient to satisfy the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Atwater and Scott both testified that Chambers shot at them. Atwater identified Chambers in court. Ballistics testing matched the shell casings found at the crime scene to Chambers' rifle. The 911 call corroborated Scott's version of the events. This evidence was sufficient to enable a rational trier of fact to find Chambers guilty beyond a reasonable doubt of two counts of aggravated assault and possession of a firearm during the commission of a felony. See id.

*Judgment affirmed. Andrews, C. J., and Smith, J., concur.*

DECIDED JANUARY 15, 1997.

*Michael R. Hauptman*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.