A02A1044. KNIGHT v. THE STATE.
A02A1045. McGUFFIN v. THE STATE.
(571 SE2d 397)

ANDREWS, Presiding Judge.

In Case No. A02A1044, Daniel Allan Knight, convicted of two counts of violating the Georgia Controlled Substances Act, selling methamphetamine on November 6 and 7, 2000, appeals, contending that the trial court erred in admitting Knight's custodial statements "which were the fruit of an illegal arrest." In Case No. A02A1045, Jackson Lee McGuffin, convicted of the sale of methamphetamine on

---

[4] *Welborn v. State*, 232 Ga. App. 837-838 (1) (503 SE2d 85) (1998).
[5] See OCGA § 5-6-38 (a); *Davis v. State*, 233 Ga. App. 825, 826-827 (505 SE2d 801) (1998).

November 6, 2000, appeals, alleging numerous errors, including the legal insufficiency of the evidence. The cases are consolidated for purposes of this appeal.

1. We consider first the legal sufficiency of the evidence as to both Knight and McGuffin. This issue was specifically raised by McGuffin in his fourth enumeration of error.

On appeal from a criminal conviction, "the evidence must be viewed in the light most favorable to support the verdict, and [defendants] no longer enjoy[ ] a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). So viewed, the evidence was that Thompson, a State agent[1] for Coweta County, was referred to Clayton County officers regarding a source for methamphetamine in Clayton County. Around 9:00 p.m. on November 6, 2000, Thompson met officers in Clayton County where he and his vehicle were searched. No drugs or money was found. Thompson was then given $350 in currency which had been photocopied to use to buy a quarter-ounce of methamphetamine at 1276 Avery Drive. Thompson had previously called co-defendant McGuffin regarding the purchase, but McGuffin was unavailable and Thompson spoke to co-defendant Henry, McGuffin's girlfriend. McGuffin later called back, and arrangements were made for purchase of a quarter-ounce.

After he was searched by officers, Thompson was followed and observed by them as he entered the residence where McGuffin and Henry lived. McGuffin told Thompson the "stuff" was not there yet, and Thompson waited a couple of hours until Knight arrived with a bag of methamphetamine. Knight and McGuffin then took a quarter-ounce from that bag, placed it into another bag, and weighed it. Thompson received the quarter-ounce and gave McGuffin the $350. Thompson later turned the methamphetamine over to officers.

Based on this purchase at the residence, officers then obtained a search warrant for the residence. The next day, officers had Thompson call to arrange a larger purchase. Thompson spoke to Henry and told her he wanted an ounce this time. Henry said McGuffin was not there, but she could make a call and might be able to get the methamphetamine herself. Thompson called back later, and Henry told him she had the amount he wanted and the price was $850.

---

[1] A citizen who agrees to make controlled buys of illegal drugs and is compensated by law enforcement agencies.

Around 7:30 p.m., Thompson was again searched, given the $850 in copied currency, and followed to the residence by officers. This time, Thompson dealt directly with Henry, receiving the methamphetamine and paying her the $850. During this transaction, Thompson heard someone moving in the back of the house.

Shortly after Thompson left the house, Knight, McGuffin, and Henry drove away in McGuffin's truck and were stopped by officers a short distance from the house. The search warrant for the residence was executed after they left. After the defendants were stopped, officers found spoons and syringes in the truck, covered with white powder. After all three defendants had been taken back to the residence and given their *Miranda* warnings, McGuffin said the spoons and syringes were used to hold methamphetamine and he had personally cleaned them.

When Knight was searched, the $850 in copied bills was found in his front pockets. The $350 from the November 6 purchase was not recovered.

As to McGuffin (Count 1, November 6 sale) and Knight (Counts 1 and 2, both sales), the evidence was legally sufficient. *Gadson v. State*, 252 Ga. App. 347, 348 (1) (556 SE2d 449) (2001); see *Jackson v. Virginia*, supra.

### Case No. A02A1044

2. In his sole enumeration of error, Knight contests the admission of his statements to police as the fruits of an illegal arrest.

Prior to trial, Knight filed neither a motion to suppress the methamphetamine purchased by Thompson nor a motion in limine regarding the alleged lack of probable cause for his arrest and the resulting inadmissibility of his statements to officers. The only point at which the matter was addressed was during the second day of trial when the trial court inquired of the State regarding the need for a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), to determine the voluntariness of several statements by the defendants.

During this hearing, counsel for Knight argued that Knight's statement that he had brought the methamphetamine to the residence was "tainted by the illegal arrest." When the officer testified in front of the jury following the trial court's ruling that the statements were voluntary under *Jackson v. Denno*, supra, however, no objection was made to the confession by Knight. Therefore, any objection to this confession was waived. *Carradine v. State*, 234 Ga. App. 330, 331 (506 SE2d 688) (1998); *Reid v. State*, 129 Ga. App. 660, 663 (2) (200 SE2d 456) (1973).

*Case No. A02A1045*

3. In his first enumeration, McGuffin contends that the trial court erred in sentencing him as a recidivist because one of his three prior felonies was for possession of a firearm by a convicted felon and could not properly be used for recidivism purposes.

The authority relied upon by McGuffin, however, stands for the proposition that "the General Assembly did not intend that the allegation and evidence of a prior felony conviction, necessary for conviction under OCGA § 16-11-131 [possession of a firearm by a convicted felon], could also be used to punish a defendant as a repeat offender under OCGA § 17-10-7 (a) . . . ," in the prosecution for possession of a firearm by a convicted felon. *King v. State*, 169 Ga. App. 444, 445 (313 SE2d 144) (1984).

That is not what happened to McGuffin. He, as was Nelson in *Nelson v. State*, 210 Ga. App. 249, 251 (4) (435 SE2d 750) (1993), was charged with a subsequent offense in which the prior possession of a firearm conviction was used as one of the required felonies for recidivist punishment. There was no error.

4. McGuffin's second enumeration, contending that his custodial statements were improperly admitted because his arrest was without probable cause, is controlled by the waiver analysis contained in Division 2, supra.

5. Finally, McGuffin contends he was deprived of a fair trial when the trial court allowed into evidence the tape recordings made by Thompson and the officers of his conversations with McGuffin and Henry. McGuffin's sole contention in this regard is that the State did not lay a proper foundation for the tape recordings.

The State laid a proper foundation, showing that the officer operating the recorder knew how to do so; that the tape recorder was working properly; that Thompson recognized McGuffin's and Henry's voices; that Thompson reviewed the tape before testifying; and that the tape had not been changed, altered, or deleted. *Gambrel v. State*, 260 Ga. 197, 200 (2) (391 SE2d 406) (1990); *Chambers v. State*, 224 Ga. App. 245 (2) (480 SE2d 288) (1997).

*Judgments affirmed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 29, 2002 —
RECONSIDERATION DISMISSED SEPTEMBER 19, 2002 —

*Lloyd J. Matthews*, for appellant (case no. A02A1044).
*Michael B. King*, for appellant (case no. A02A1045).

*Robert E. Keller, District Attorney, Jane E. Grabowski, Assistant District Attorney,* for appellee.