## S07A0429. SIMMONS v. THE STATE.
### (646 SE2d 55)

MELTON, Justice.

Following a jury trial in which the State sought the death penalty, Randy Simmons was found guilty of malice murder, felony murder, two counts of armed robbery, and aggravated assault.[1] Prior to the start of the sentencing phase of his trial, Simmons entered into a sentencing agreement with the State, allowing him to avoid possible imposition of the death penalty. Simmons now appeals, contending among other things that the evidence was insufficient to support his convictions. We affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on November 21, 2002, Simmons, Marcus Gary, Keenan Stokes, and Samantha Faulk planned to rob Michael Norby as he was making a night deposit at a local bank. After being dropped off by Faulk in woods near the bank, Simmons handed an AK-47 rifle to Stokes, and Simmons and Gary carried guns as well. After Norby pulled into the bank to make his deposit, the assailants surrounded Norby's truck, and Stokes opened fire, killing Norby. Simmons and Stokes then dragged Norby's body into the woods and took Norby's checkbook and wallet from his truck. Simmons returned to the scene later that evening to remove shell casings from around the truck; however, one AK-47 shell casing was left behind. Both Simmons and Gary confessed to this crime and fully described its circumstances.

---

[1] On May 6, 2003, Simmons was indicted in Liberty County for the murder of Michael Norby, the felony murder of Norby, the armed robbery of Norby, the armed robbery of Antonio Babbs, the kidnapping of Babbs, the criminal attempt to commit robbery of the Silver Dollar Lounge, the armed robbery of Maie Galligan, and the aggravated assault of Ty Hawthorne. Following a jury trial in which the State sought the death penalty, Simmons was found guilty of all counts except the armed robbery and kidnapping of Babbs. Prior to the start of the sentencing phase of trial, Simmons entered into a sentencing agreement with the State. In consideration of this agreement, the trial court sentenced Simmons on March 30, 2005, to life imprisonment for the murder of Norby (with the felony murder count being vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993)), a consecutive life term for the armed robbery of Norby, ten years imprisonment for criminal attempt to commit robbery, consecutive to the murder of Norby and concurrent to the armed robbery of Norby, life imprisonment for the armed robbery of Galligan, consecutive to the murder of Norby and concurrent to the armed robbery of Norby, and twenty years for the aggravated assault of Hawthorne, consecutive to the murder of Norby and concurrent to the armed robbery of Norby. Simmons filed a motion for new trial on April 21, 2005, and an amended motion on October 4, 2006. The motion was denied on October 6, 2006. Simmons' timely appeal was docketed in this court on November 28, 2006 and submitted for decision on the briefs.

These confessions were almost identical, and they were corroborated by videotape from a bank surveillance camera which captured footage of the murder in progress. In addition, Gary led police to the hiding places of personal items of Norby which had been removed from his truck after the murder.

The record further shows that, on December 23, 2002, Faulk, again acting as a get-away driver, drove Simmons, Gary, and Wati Huggins to the Silver Dollar Lounge, which they had planned to rob that evening. They aborted the mission, however, after they discovered that there were too many people on the premises. They returned the following night, and, in the parking lot, Simmons robbed the club's bartender, Maie Galligan, taking her purse after threatening her with the AK-47 that had previously been used to murder Norby. Ty Hawthorne, the club's bouncer, witnessed the robbery, confronted Simmons, grappled with him, and wrested the gun out of Simmons' grip. Simmons and the others fled the scene when Hawthorne started to fire the AK-47 at them. Again, both Simmons and Gary fully admitted that they committed these crimes.

This evidence was sufficient to enable the jury to find Simmons guilty of the crimes for which he was convicted beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and, as such, the trial court did not err by denying Simmons' motions for directed verdict. *Joyner v. State*, 280 Ga. 37 (1) (622 SE2d 319) (2005).

2. Simmons contends that the trial court erred by admitting statements made by him confessing to the crimes in question, arguing that his *Miranda* rights were violated. Simmons also contends that the trial court erred by allowing the jury to refer to a transcript of these statements. The record shows, however, that Simmons was properly informed of his *Miranda* rights prior to giving the statements, and that Simmons also voluntarily signed a *Miranda* waiver. Simmons offers absolutely no evidence of any *Miranda* violation in this case, and the record does not support his arguments. With regard to Simmons' contention regarding the transcript of these statements, the record shows that, prior to allowing the jury to refer to the transcript during testimony, the trial court gave an instruction that the contents of the taped confession, not the transcript, was the evidence the jury should use in reaching a decision. As a result, there was no error. See *Robertson v. State*, 268 Ga. 772 (14) (493 SE2d 697) (1997).

3. Simmons argues that the trial court erred by admitting the testimony of Gary, his accomplice. Accomplice testimony may be admitted where it is corroborated by slight evidence from an extraneous source identifying the defendant as a participant in a crime. *Smith v. State*, 238 Ga. 640 (235 SE2d 17) (1977). In this case, Gary's

statement was amply corroborated by Simmons' own confession as well as physical evidence and the testimony of witnesses to the various crimes. Therefore, Gary's statement was admissible. Simmons also argues that a police detective was improperly allowed to testify regarding statements that Gary had made to him regarding the crimes, specifically claiming that these statements were hearsay. The record shows, however, that Gary, himself, testified at trial and offered the same information. Therefore, even if the detective's testimony included hearsay, no harm occurred as the evidence was merely cumulative of Gary's own prior testimony. *Walker v. State*, 281 Ga. 521 (4) (640 SE2d 274) (2007).

4. Simmons argues that the trial court erred by denying his motion for severance.

> This court has held that a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique.

(Citations and punctuation omitted.) *Coats v. State*, 234 Ga. 659, 662 (4) (217 SE2d 260) (1975). Furthermore, where evidence of one charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance. *Noble v. State*, 275 Ga. 635 (2) (570 SE2d 296) (2002).

In this case, all of the crimes for which Simmons was charged include the same core group of participants committing armed robberies with similar characteristics over a short period of time.[2] Therefore, on the facts of this case, it cannot be said that the trial court abused its discretion in denying the motion for severance. *Coats*, supra, 234 Ga. at 662-663 (4). Simmons' argument that the combined trial of the charges confused and misled the jury does not change this outcome. Id. Simmons provides no evidence of any such

---

[2] In addition to the offenses described above, Simmons was also indicted for the November 7, 2002 armed robbery and kidnapping of Antonio Babbs. The offense, as charged, involved the same AK-47 and some of the same core group of cohorts during the crime as in the Norby murder and Galligan robbery. Simmons was ultimately acquitted of these charges. The trial court did not err by denying the motion for severance of this charge. See *Woolfolk v. State*, 282 Ga. 139 (644 SE2d 828) (2007); *Wilcox v. State*, 271 Ga. 544, n. 2 (522 SE2d 457) (1999).

confusion, and the verdict itself, including Simmons' acquittal for some of the charges, shows that the jury fully understood the law and evidence.

5. In multiple enumerations of error specifically related to death penalty issues, Simmons contends that the trial court committed errors relating to voir dire, striking jurors, or seating jurors. In this case, however, the jury did not actually sentence Simmons, and Simmons, through his agreement with the State, avoided the imposition of the death penalty. As a result, all of Simmons' arguments in this regard must be dismissed either because he lacks standing to assert them or because they are moot. See *Pless v. State*, 231 Ga. 228 (2) (200 SE2d 897) (1973); *Beasley v. State*, 269 Ga. 620 (13) (502 SE2d 235) (1998); *Hinely v. State*, 275 Ga. 777 (4) (573 SE2d 66) (2002). For the same reasons, Simmons' contentions that the trial court erred by failing to grant him a continuance to allow his death penalty expert to complete her work and by denying his motion to bar the death penalty on grounds of disproportionality are also untenable.

6. Simmons contends that the trial court erred by preventing him from asking several potential jurors about any racial bias they might harbor. "The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." (Citation and punctuation omitted.) *Ramirez v. State*, 279 Ga. 569, 574 (5) (619 SE2d 668) (2005). The record shows that the trial court, itself, asked the jurors whether they had any "racial bias against the defendant or anything of that nature," and Simmons was allowed to ask the jurors whether they harbored conscious or unconscious racism. There was no error. Id.

7. Simmons contends that the trial court erred by preventing him from asking a potential juror what effect his decision not to testify would have on that potential juror. A trial court does not abuse its discretion by denying the use of such a question during voir dire. *Anderson v. State*, 161 Ga. App. 816 (1) (289 SE2d 22) (1982). See also *McNeal v. State*, 228 Ga. 633, 636 (187 SE2d 271) (1972).

8. Simmons contends that the trial court erred by qualifying a certain juror who stated that he had read about Simmons' case in a local newspaper and thought that Simmons might have already been convicted. This juror stated, however, that he would base his judgment solely on the evidence presented to him at trial and acquit the defendant if the State were not able to satisfy its burden of proof. "[A] juror's pretrial exposure to media coverage of a crime [does not] mandate that the juror be excused for cause where, as here, the juror expresses the ability to set aside anything they had heard or seen and

base their personal verdicts only on the evidence presented in the courtroom." (Citation and punctuation omitted.) *Ramirez*, supra, 279 Ga. at 573 (3).

9. Simmons contends that the trial court erred by preventing him from questioning a potential juror whether he would automatically prefer the testimony of a police officer over other witnesses. "[I]t is not error to refuse to allow defense counsel to ask whether a prospective juror would tend to believe or prefer the testimony of a police officer over other testimony." (Citation omitted.) *Blanco v. State*, 185 Ga. App. 535 (1) (364 SE2d 903) (1988).

10. Simmons argues that the trial court erred by admitting testimony from Norby's girlfriend regarding their relationship, contending that this information was irrelevant.

> "Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant." [Cits.] The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases.

(Citation omitted.) *Brooks v. State*, 281 Ga. 514, 517 (3) (640 SE2d 280) (2007). The relevancy of the evidence in question is not in doubt here. The record shows that Norby's girlfriend called police to report that he was missing, and she explained that she did so because of their relationship. This testimony was not irrelevant.

11. In a series of enumerations, Simmons challenges the trial court's admission of pictures taken at the scene of Norby's murder, arguing that the State failed to show a proper foundation for these exhibits. These include pictures of Norby's truck, a bloody flashlight on the ground by the truck, and an aerial shot of the bank. A review of the record, however, shows that an adequate foundation was developed for these photographs. See *Isaacs v. State*, 259 Ga. 717 (26) (386 SE2d 316) (1989). Moreover, even if foundation had been lacking, any error would have been harmless given the overwhelming evidence, including Simmons' confession, that he participated in the crimes for which he was convicted. See *Gilchrist v. State*, 270 Ga. 287 (5) (508 SE2d 409) (1998).

12. Simmons also contends that the trial court erred by admitting certain pictures of Norby's body at the scene of the crime, including a picture that showed ants crawling on the body. The trial court, however, did not err by admitting the pictures of Norby's body in this case, as all of the pictures were "relevant and material to the identity of the victim, the location of the victim's body, the location of

certain physical evidence at the scene, and the location and nature of the victim's wounds." (Citation omitted.) *Smith v. State*, 258 Ga. 179, 180 (2) (366 SE2d 687) (1988). See also *Jenkins v. State*, 270 Ga. 607 (3) (512 SE2d 269) (1999).

13. Simmons argues that numerous items of physical evidence, including a shell casing recovered from the scene of Norby's murder, Norby's wallet, Norby's checkbook, brown gloves worn by Norby's assailants, a jumpsuit, and a skully cap were improperly admitted without showing a proper chain of custody. Because all of the items about which Simmons complains are non-fungible physical objects easily identifiable by observation, proof of their chain of custody was not required prior to their admission into evidence. *Young v. State*, 280 Ga. 65 (5) (623 SE2d 491) (2005). See also *Chambers v. State*, 224 Ga. App. 245 (1) (480 SE2d 288) (1997).

14. Simmons maintains that the trial court erred by refusing his requests to charge the jury on mere presence and guilt by association. Simmons was not entitled to these jury instructions, however, because the evidence, including Simmons' confession, showed that Simmons was an active participant in all of the crimes with which he was charged. *McCulley v. State*, 273 Ga. 40 (3) (a) (537 SE2d 340) (2000). Moreover, mere presence is only a corollary to the requirement that the State prove each element of the crime charged, and, as the trial court's instructions clearly informed the jury of this requirement, there was no error. *White v. State*, 225 Ga. App. 74, 76 (6) (483 SE2d 329) (1997).

15. We have examined Simmons' remaining enumerations and find them to be either waived or without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 4, 2007 —
RECONSIDERATION DENIED JUNE 25, 2007.

*Ray C. Smith*, for appellant.

*Tom Durden, District Attorney, Melissa L. Poole, Mark A. Hendrix, Assistant District Attorneys, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.