308 Ga. 761
FINAL COPY

S20A0288.  CARSON v. THE STATE.

ELLINGTON, Justice.

Anderson Carson was tried before a Fulton County jury and convicted of the malice murder of Lee Sokol and the robbery by force of Fred Hickson.[1] Carson contends on appeal that the trial court erred in (1) denying his motion to sever, (2) appearing to assist the State in its prosecution by recommending that the State procure material witness warrants, (3) permitting the introduction into

---

[1] The crimes occurred on June 8 and 9, 2009. On February 9, 2010, Carson was indicted for the malice murder, felony murder predicated on aggravated assault, and aggravated assault of Sokol.  In the same indictment, Carson was charged with the robbery by force and battery of Fred Hickson. Carson was tried before a jury in January 2011. The jury found Carson guilty of malice murder, felony murder, aggravated assault, and robbery by force, and not guilty of battery. The trial court sentenced Carson to life imprisonment for malice murder and to a consecutive sentence of ten years for robbery by force. The count of aggravated assault merged with the count of malice murder.  The trial court indicated that the count of felony murder merged with the count of malice murder, although the felony murder was actually vacated by operation of law. See *Lucky v. State*, 286 Ga. 478, 480 (2) (689 SE2d 825) (2010). Carson filed a timely motion for new trial, which he amended on September 6, 2013. The trial court denied the motion on February 8, 2019. Carson filed a timely notice of appeal, and his appeal was docketed to the term beginning in December 2019 and submitted for decision on the briefs.

evidence of Carson's prior conviction for aggravated assault, (4) allowing the State to introduce into evidence a booking photograph without providing the photograph to the defense in accordance with the State's discovery obligations, (5) denying his motion to exclude his statements to a police detective, (6) denying his motion to suppress, and (7) failing to strike a prospective juror for cause. Carson also contends that the evidence was insufficient to support the jury's verdicts. We affirm for the reasons set forth below.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial shows the following. On the morning of June 9, 2009, a teacher at E. Rivers Elementary School in Atlanta looked out of his classroom window and saw a man's body lying in the courtyard. City of Atlanta police officers responded to the scene around 7:30 a.m. The decedent, later identified as Sokol, had suffered severe head wounds. A bloody rock was lying two to three feet away from the body.

Detective William Murdock noticed that cameras had been placed around the school and asked Atlanta Public Schools for a copy

of the video. After speaking with the teacher who discovered the body, Murdock and other officers canvassed the school and nearby areas but were unable to locate any additional witnesses.

Later in the day, Detective Murdock attended the autopsy of the victim. The medical examiner determined that Sokol had died from blunt force injuries to the head. While Detective Murdock was at the medical examiner's office, he received a report that Carson had been arrested at approximately 12:15 a.m. the night before near Piedmont Hospital on a charge of robbery of a pedestrian. That location was less than a mile from the elementary school. The sequence of violent crimes stood out to Detective Murdock because those types of crime were rare in that area of the city.

Detective Murdock arranged for the Fulton County sheriff to have Carson remanded to his custody for purposes of an interview, which occurred on June 9. Before the interview, Detective Murdock received two video images recorded by the school's cameras. One frame, taken at 10:43 p.m. on June 8, showed a man wearing all black clothing, white shoes, and carrying a light colored bag. The

other image, time stamped 10:48 p.m., showed another man wearing long dark or blue shorts and a hooded sweatshirt.

During the interview, Detective Murdock read Carson his *Miranda*[2] rights. Carson then denied having been anywhere near the elementary school. Carson also said that he had been wearing jean shorts and a "hoodie sweatshirt" on the night of his arrest. Detective Murdock applied for and obtained a search warrant for the clothes Carson had been wearing when he was arrested. A GBI forensic analyst testified that DNA obtained from blood on Carson's clothes, as well as from the rock found at the scene, originated from Sokol.

Three days after interviewing Carson, Detective Murdock received 12 hours of video recordings from the elementary school's security cameras. Portions of the video recordings were played for the jury at trial. None of the cameras had been pointed at the courtyard area where Sokol's body was found. However, a man wearing long shorts and a light-colored hooded sweatshirt was

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

shown entering the school property after 10:39 p.m. A second man, dressed in black clothes and wearing white tennis shoes, was seen at 10:43 p.m. walking into the courtyard and off camera. The second man's clothing matched that worn by Sokol. The man wearing a hood walked in and out of the view of the cameras several times, including walking into and out of the courtyard area. The man with the hood was last seen on the school's video at 11:31 p.m.

The State also presented evidence of the robbery that occurred the night before Sokol's body was discovered. In the early morning of June 9, 2009, Fred Hickson and his cousin left Piedmont Hospital and waited for their cab to arrive. Carson came from behind Hickson and punched him in the face. After Hickson turned around in shock, Carson took Hickson's jacket and ran. Hickson and his cousin ran after Carson, who picked up a brick and confronted the two men.

A City of Atlanta police officer was driving by Piedmont Hospital shortly after midnight on June 9 when he saw Hickson and his cousin chasing Carson through the parking lot. The officer stopped the two cousins, and then Carson. Carson was arrested and

taken to jail. Hickson's jacket was recovered at the scene.

The State also introduced evidence of a similar transaction. Jory Hardin testified that on December 1, 2003, he was working as a uniformed police officer with the Metropolitan Atlanta Rapid Transit Authority. When Officer Hardin opened the Civic Center station at 4:00 that morning, Carson hit Officer Hardin in the head with a brick.

1. Carson claims that the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of the malice murder, felony murder, and aggravated assault of Sokol because the State relied on circumstantial evidence which did not exclude all reasonable hypotheses other than his guilt.

> Under both former OCGA § 24-4-6, in effect at the time of [Carson's] trial, and present OCGA § 24-14-6, in order to convict [Carson] of the crimes based solely upon circumstantial evidence, the proven facts had to be consistent with the hypothesis of his guilt and exclude every reasonable hypothesis save that of his guilt. Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. The reasonableness of an alternative hypothesis raised by a defendant is a question principally for the jury, and when

the jury is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of the accused's guilt, this Court will not disturb that finding unless it is insupportable as a matter of law.

*Cochran v. State*, 305 Ga. 827, 829 (1) (828 SE2d 338) (2019) (citation and punctuation omitted).

Carson argues that the evidence failed to exclude the reasonable possibility that other persons killed Sokol or that Carson's involvement in Sokol's death, if any, did not rise to the level of malice murder, felony murder, or aggravated assault. However, a jury could have reasonably inferred from the evidence that Sokol was bludgeoned to death with the bloody rock found at the scene. DNA evidence showed that Sokol's blood was on Carson's clothes. It could also be inferred that the two persons seen before midnight on the school's video were Carson and Sokol. Although Carson points to Detective Murdock's testimony that the school's video showed several persons on school property around 6:00 a.m., which was before Sokol's body was discovered, Carson does not point to evidence showing that those persons came into contact with Sokol.

On the other hand, the evidence showed that Carson had been in contact with Sokol hours earlier given that he was wearing clothing containing Sokol's blood when he was arrested on the robbery charge shortly after midnight. The evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis other than Carson's guilt, see former OCGA § 24-4-6, and for a rational trier of fact to find beyond a reasonable doubt that Carson was guilty of the malice murder, felony murder, and aggravated assault of Sokol. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Carson contends that the trial court erred in denying his motion to sever the charges alleging the robbery and battery of Hickson from the charges alleging the murder, felony murder, and aggravated assault of Sokol. In a related claim of error, Carson contends that the trial court erred by characterizing the charged offenses as a "crime spree" while hearing argument on the motion to sever.

(a) We first consider whether the trial court erred in denying

the motion to sever. Where offenses are joined in a single indictment,

> a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique.

*Simmons v. State*, 282 Ga. 183, 185 (4) (646 SE2d 55) (2007) (citation and punctuation omitted). If severance is not mandatory, it is nevertheless "incumbent upon the trial court to determine whether severance was necessary to achieve a fair determination of appellant's guilt or innocence as to each offense." *Hickman v. State*, 299 Ga. 267, 270 (2) (787 SE2d 700) (2016) (citation omitted). To make that determination, "[t]he court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Id. at 269 (2) (citation and punctuation omitted).

In this case, the crimes against Sokol and Hickson occurred

only a few blocks apart and within a short period of time. During these incidents, Carson hit Sokol on the head with a rock and picked up a brick and threatened Hickson. "Severance is generally not warranted where the crimes charged occurred over the same period of time and stem from a course of continuing conduct." *Hubbard v. State*, 275 Ga. 610, 611 (2) (571 SE2d 351) (2002). See *Strozier v. State*, 277 Ga. 78, 81 (5) (a) (586 SE2d 309) (2003) (finding no abuse of discretion in court's failure to sever charges that were part of a single "crime spree"). Carson's arrest for the robbery was also integral to Carson's identification as a suspect in the murder and was part of the series of events that led to the DNA testing of Carson's clothes. See *Stewart v. State*, 239 Ga. 588, 589 (3) (238 SE2d 540) (1977) (It was not an abuse of discretion to refuse to sever charges that "were part of a continuous transaction conducted over a relatively short time, and from the nature of the entire transaction, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other[.]" (citation and punctuation omitted)).

As the robbery and murder charges were not joined solely because they were of the same or similar character, severance was not mandatory. See *Green v. State*, 291 Ga. 287, 289 (2) (728 SE2d 668) (2012) ("[O]ffenses have not been joined solely because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another[.]" (citation, punctuation and emphasis omitted)). "There is no evidence in this case that the combined trial of the charges confused or misled the jury, and the verdict itself, including [Carson's] acquittal for [battery], shows that the jury fully understood the law and evidence." *Heard v. State*, 287 Ga. 554, 559 (4) (697 SE2d 811) (2010) (citation and punctuation omitted). The trial court did not abuse its discretion in denying the motion to sever.

(b) Carson also contends that the trial court "erred by characterizing the unrelated events as a crime spree where the State had not characterized the events as such." During the motion hearing, the State argued that the trial court should not grant the motion to sever because, among other things, the events underlying

the robbery and battery charges occurred "within moments of the murder . . . [eight-tenths] of a mile away . . . [constituting] a second violent crime in . . . [Carson's] plan for the night." The trial court then asked, "[y]ou're saying it's a crime spree?" The prosecutor responded, "it is two violent crimes right there together . . . almost within 20 minutes of each other and within three blocks[.]"

Carson does not cite any authority for the proposition that a trial court cannot ask counsel to clarify an argument, and we are not aware of any. Nor does Carson show that the trial court misunderstood the State's position. This claim of error has no merit.

3. Carson contends that the trial court erred in appearing to assist the State in the prosecution of its case by recommending that the State secure material witness warrants for its witnesses. The record shows that, during the course of the trial, the court asked the State to call its next witness. Rather than call a witness, the prosecutor asked to approach and a bench conference followed. The trial court sent the jury out and then said that "[i]f the State needs a material witness warrant, they need to get it to me right now. . . .

Get people out looking. Otherwise call the rest of your witnesses in early." The trial court then ordered a recess for an "early lunch." Carson contends that this series of events, to which he interposed no objection, violated the trial court's duty under OCGA § 17-8-57 not to intimate its opinion of the evidence during the trial of the case and constituted at least the appearance of impropriety in advising the prosecution how to proceed with its case.

In context, the trial court's comments to the State were taken with a view to avoid further delay in the proceedings and were not a comment on the evidence or an attempt to help the State with the prosecution. Nor did OCGA § 17-8-57[3] apply to the trial court's comments as those comments were made outside the presence of the jury. See *Bamberg v. State*, — Ga. —, — (5) n.12 (839 SE2d 640) (2020) ("[T]he prohibitions found in OCGA § 17-8-57 do not apply when the complained of comments are made outside the presence of

---

[3] OCGA § 17-8-57, "as amended in 2015, applies to appeals decided after 2015." *Bamberg v. State*, — Ga. —, — (5) (839 SE2d 640) (2020).

the jury." (citation and punctuation omitted)). Carson shows no error.

4. Carson contends that the trial court erred in allowing the State to introduce Carson's prior conviction for aggravated assault. At the time of Carson's 2011 trial, before introducing evidence of a "similar transaction" the State was required to show that (1) the evidence was being admitted for a proper purpose, (2) there was sufficient evidence to establish that the accused committed the independent offense or act, and (3) there was a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We review the admission of similar transaction evidence for abuse of discretion. *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009).

Carson does not contest that the similar transaction was admitted for a proper purpose, which in this case was to show bent of mind and course of conduct. See *Scruggs v. State*, 295 Ga. 840,

841 (2) (764 SE2d 413) (2014).[4] Carson argues that the State nevertheless failed to carry its burden of showing that Carson committed the similar offense because Officer Hardin was not certain of the name or identity of his assailant. During his testimony at trial, Officer Hardin initially said that it was "possibly" Carson who hit him with a brick over seven years earlier. However, after the State refreshed Officer's Hardin's memory with the police report, he recalled that Anderson Carson was the name of the person he identified as his attacker shortly after the incident. Thus, the State sufficiently showed that Carson assaulted Officer Hardin. See *Rucker v. State*, 250 Ga. 371, 374 (5) (297 SE2d 481) (1982) (a witness may use a document to refresh his memory and then speak from his recollection as refreshed); former OCGA § 24-9-69 (effective until January 1, 2013) ("A witness may refresh and assist his memory by the use of any written instrument or memorandum,

---

[4] As we have explained, "bent of mind" and "course of conduct" are not proper purposes for the admission of other acts evidence under OCGA § 24-4-404 (b) of the current Evidence Code. See *Brooks v. State*, 298 Ga. 722, 727 (2) (783 SE2d 895) (2016).

provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper.").

Carson also claims that the trial court erred in allowing the State to introduce the similar transaction because there was no evidence that the previous assault and the later assault of Sokol occurred in a "like manner." The proper focus in the assessment of similar transaction evidence at the time of Carson's trial was "on the similarities, not the differences, between the separate act and the crimes in question." *Johnson v. State*, 289 Ga. 22, 24 (2) (709 SE2d 217) (2011) (citation omitted). In both incidents the victims were struck on the head at night with blunt objects not commonly wielded as a weapon, specifically a brick and a rock. See *Sport v. State*, 253 Ga. 689, 690 (1) (324 SE2d 184) (1985) (prior acts evidence showing that defendant shot another person the day before the murder with a similar weapon was admissible to show "bent of mind and propensity for use of a pistol"); *Saylors v. State*, 251 Ga. 735, 738 (7) (309 SE2d 796) (1983) (trial court properly admitted "prior conduct involving knives"). The trial court did not abuse its discretion in

allowing the evidence.

5. Carson claims that the trial court erred in allowing the State to introduce a booking photograph of Carson over his objection that the State had not provided the photograph to the defense in response to his request for discovery. The photograph shows Carson's face and shoulders and that he was wearing, as described by Detective Murdock, "a hooded top of some sort."

OCGA § 17-16-4 (a) (3) (A)[5] generally requires that the prosecuting attorney allow the defendant to inspect and copy, no later than ten days before trial, the photographs, among other objects, that the State has within its possession, custody, or control and intends to use as evidence at trial in its case-in-chief or in

---

[5] OCGA § 17-16-4 (a) (3) (A) provides in pertinent part:
    [T]he prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof . . . which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial or were obtained from or belong to the defendant.

rebuttal. "[T]he State may be prohibited from introducing evidence that was not timely disclosed only upon a showing of both prejudice to the defendant and bad faith by the State. See OCGA § 17-16-6[.]"[6] *Thompson v. State*, 295 Ga. 96, 101 (3) (a) (757 SE2d 846) (2014) (citation omitted).

Carson argues that he was prejudiced in that he was unable to prepare for the "damaging evidence" of a picture showing him wearing clothes that were later shown to have the deceased's blood on them. But the booking photograph was cumulative of other evidence. An individual who worked at the jail testified as to the clothing Carson was recorded as wearing when he was booked. Detective Murdock testified that Carson told him that he had been wearing a grey hoodie and jean shorts at the time of his arrest.

---

[6] OCGA § 17-16-6 provides in pertinent part:

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

Furthermore, the State introduced the actual clothing that Carson wore when he was booked. As Carson does not show he was prejudiced, we conclude that the trial court did not abuse its discretion in the admission of the booking photograph. See *Swanson v. State*, 282 Ga. 39, 43 (3) (644 SE2d 845) (2007) (appellant was not prejudiced by the State's alleged discovery violation in failing to provide him with cell phone call logs as the evidence was cumulative of direct testimony). See also *Hawkins v. State*, 304 Ga. 299, 305-306 (4) (b) (818 SE2d 513) (2018) (admission of screenshot evidence that was not provided by the State to the defense more than ten days before trial was cumulative of witness testimony and not prejudicial to the defense).

6. Carson claims that the trial court erred in denying his motion to exclude the statements he made to police officers in his June 9, 2009 interview.

> In ruling on the admissibility of an in-custody statement, the trial court must look to the totality of the circumstances to decide whether the statement was made freely and voluntarily. The trial court's factual findings and credibility determinations regarding the

admissibility of in-custody statements will be upheld on appeal unless clearly erroneous. Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on appeal.

*Milinavicius v. State*, 290 Ga. 374, 375 (2) (721 SE2d 843) (2012) (citations omitted).

At the pre-trial *Jackson-Denno*[7] hearing, the trial court considered Carson's motion to exclude the in-custody statements he made to Detective Murdock on June 9, 2009 and December 2, 2009. The trial court allowed Carson's statements from the June interview to be admitted at trial. The trial court suppressed Carson's statements in the December interview other than for purposes of rebuttal.

With respect to the June interview, Detective Murdock testified at the hearing that after Carson was released into his custody by the Fulton County sheriff, he interviewed Carson at a police station, where he read Carson his *Miranda* rights. According to Detective Murdock, he asked Carson if he understood those rights

---

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

and if he wished to speak without a lawyer. Carson then agreed to speak.

Carson argues that Detective Murdock's hearing testimony "was in conflict" and so could not support a finding that his custodial statements were voluntary. We disagree. The inconsistencies in Detective Murdock's testimony alleged by Carson pertain to the December interview, not the June interview. Nor did the trial court suppress Carson's statements in the December interview because it found that Detective Murdock's testimony at the motion hearing lacked credibility.[8]

Carson also contends that the June interview was not sufficiently documented. Testimony showed that due to technical problems the June interview was not recorded. Nor did Detective Murdock obtain a written waiver of Carson's *Miranda* rights. It is the better practice to record the reading of the *Miranda* warning and the defendant's waiver. See *Humphreys v. State*, 287 Ga. 63, 74 (6)

---

[8] The trial court suppressed the statements from the December interview because Detective Murdock told Carson he was there to talk about the robbery and failed to inform Carson that he was being charged with murder.

(694 SE2d 316) (2010), disapproved on other grounds in *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018). The trial court was nevertheless entitled to base its ruling on the testimony and credibility of Detective Murdock. See *Butler v. State*, 292 Ga. 400, 404 (2) (738 SE2d 74) (2013) ("[T]he law does not require that the voluntariness of a statement be proved by a recording of the interview." (citations omitted)); *Spain v. State*, 243 Ga. 15, 16 (1) (252 SE2d 436) (1979) (In the absence of a written waiver of constitutional rights, a court may still find from the totality of the evidence that the State carried its burden of showing waiver.). The trial court did not err in denying Carson's motion to exclude his statements in the June interview.

7. Carson contends that the trial court erred in denying his motion to suppress the search warrant for his clothes because the probable cause for the search was derived from information fabricated by Detective Murdock and included in the affidavit supporting the issuance of the search warrant.

In reviewing the trial court's grant or denial of a motion

to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

*Mizell v. State*, 304 Ga. 723, 727 (2) (822 SE2d 211) (2018) (citation and punctuation omitted).

The relevant portion of the affidavit states that Carson "was arrested at 12[:]20 a.m. approximately 3 blocks from the scene of the murder. Mr. Carson was wearing the same clothing as that a person of interest was seen wearing on video captured from the school's video system." Carson argues that Detective Murdock's assertion that Carson was wearing the same clothes as the person of interest was knowingly false because the detective had not then seen Carson's clothes. "[I]f a court determines that an affidavit contains material false representations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether

probable cause exists to issue a warrant." *Moss v. State*, 275 Ga. 96, 102-103 (3) (561 SE2d 382) (2002) (punctuation and footnote omitted).

The evidence showed that Carson told Detective Murdock during the June 9 interview that he had been wearing a hoodie and jean shorts the previous evening. Before submitting the affidavit in support of the warrant for Carson's clothes, Detective Murdock viewed a photograph captured from the school's video cameras depicting a person wearing shorts and a hooded sweatshirt on school property the night before. Thus, the trial court could conclude from the evidence that the detective's statement that Carson had been "wearing the same clothing" as a person of interest had a factual basis. Although Carson contends that the trial court erred in accepting the testimony of the detective as to what Carson said about his clothes during the June interview, it was for the trial court to assess the detective's credibility. See *Mizell*, 304 Ga. at 727 (2) ("[T]he trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (citation and punctuation

omitted)). Carson shows no error.

8. Lastly, we consider Carson's claim that the trial court erred in denying his motion to strike a prospective juror for cause. Pretermitting whether the trial court erred as alleged, Carson cannot show harm. In assessing harm arising from a trial court's erroneous refusal to excuse a prospective juror, at issue is "whether any unqualified juror was seated as the ultimate result of errors with respect to jurors challenged for cause." *Willis*, 304 Ga. at 705 (11) (a) (citation and punctuation omitted). Here, the prospective juror whom the trial court refused to excuse was not seated on the jury.[9] Nor does Carson show that any unqualified juror was seated. Accordingly, Carson does not show reversible error. See *Willis*, 304 Ga. at 705 (11) (a). See also *Johnson v. State*, 348 Ga. App. 667, 679

---

[9] It is not clear from the record why the prospective juror was not seated as a juror. But even assuming that Carson used a preemptive strike to remove the prospective juror, he cannot show harm. See *Welbon v. State*, 304 Ga. 729, 732 (2) (822 SE2d 277) (2018) (if trial counsel had moved to strike the prospective juror, any error by the trial court in denying the motion to strike would have been harmless because the appellant "used one of his peremptory strikes to remove that same prospective juror from the panel from which the twelve-person jury was chosen, and he [did not show] that any challenged juror who served on his jury was unqualified").

(2) (824 SE2d 561) (2019) (As appellant did not argue "that any of the jurors who ultimately served on the jury at her trial were unqualified[,] . . . even if [appellant] could establish that [the prospective juror was] impermissibly biased and unqualified to serve on the jury, she cannot show that she was harmed by the trial court's failure to strike [the prospective juror] for cause.").

*Judgment affirmed. All the Justices concur.*

Decided May 18, 2020.
Murder. Fulton Superior Court. Before Judge Newkirk.
*Viveca B. Famber*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.