NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 4, 2022

S22A0812.  LOWE v. THE STATE.

ELLINGTON, Justice.

A Gwinnett County jury found Walter Jerome Lowe guilty of felony murder and other offenses in connection with the July 2017 shooting death of his wife, Erica Powell.[1] The jury also found Lowe

---

[1] On May 9, 2018, a Gwinnett County grand jury indicted Lowe for crimes against Powell occurring on two different dates. In connection with Powell's July 20, 2017 shooting death, the indictment alleged: malice murder (Count 1); felony murder predicated on aggravated assault (Count 2); felony murder predicated on possession of a firearm by a convicted felon (Count 3); family violence aggravated assault (Count 4); possession of a firearm or knife during the commission of a felony (Count 5); and possession of a firearm by a convicted felon (Count 6). The grand jury also indicted Lowe for crimes against Powell and others occurring on August 19, 2015: family violence aggravated assault (Count 7); terroristic threats (Count 8); family violence battery (Count 9); simple battery (Count 10); hindering an emergency telephone call (Count 11); cruelty to children in the third degree (Count 12); and obstruction of an officer (Count 13). Prior to trial, Lowe pled guilty to Counts 9 through 11 and Count 13, but the trial court deferred sentencing on these counts until after trial on the remaining charges. During Lowe's trial, which commenced on August 6, 2018, the court granted Lowe's motion for a directed verdict on Count 8 (terroristic threats). The jury found Lowe guilty on Counts 2 and 3 (felony murder), but not guilty on Count 1 (malice murder). With respect to Count 7

guilty of family violence aggravated assault and cruelty to children in the third degree, crimes that occurred on August 19, 2015. Lowe enumerates two claims of error, both of which are related to the joinder in one indictment of the 2015 acts of domestic violence against Powell and her 2017 murder: (a) the trial court erred in denying Lowe's motion to sever and (b) trial counsel's deficient argument in support of Lowe's motion to sever constituted ineffective assistance.

As more fully explained below, because Lowe's 2015 criminal acts involving Powell would have been admissible in the trial of

---

(family violence aggravated assault), the jury found Lowe guilty of the lesser offense of family violence battery. The jury returned guilty verdicts on the remaining counts.

On October 18, 2018, the court sentenced Lowe to life in prison without the possibility of parole on Counts 2 and 3; a five-year prison term on Count 5 (consecutive to Count 2); a five-year prison term on Count 6 (concurrent with Count 2); a 20-year prison term on Count 7 (concurrent with Count 2); and 12-month consecutive prison terms on Counts 9 through 13 (the first in the series of sentences to run consecutive to Count 5). Count 4 merged for purposes of sentencing with Count 2. On October 8, 2018, Lowe filed a timely motion for a new trial through trial counsel. Shortly thereafter, the court appointed new counsel, but allowed that attorney to withdraw on May 25, 2021. Lowe's current counsel filed an entry of appearance on August 5, 2021. Thereafter, the court held a hearing on Lowe's motion for a new trial and denied it on December 9, 2021. Lowe filed a timely notice of appeal. Lowe's appeal was docketed to the April 2022 term of this Court and submitted for a decision on the briefs.

Powell's 2017 murder pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"), Lowe has not shown that the trial court abused its discretion by denying the motion to sever. Lowe also contends that his trial counsel was ineffective in failing to cite the non-binding 1980 ABA guidelines on joinder of offenses in his argument for severance. However, this claim of error is also without merit because severance was properly denied based upon the relevant and controlling Georgia law counsel cited in his severance motion and supporting brief.[2] Consequently, we affirm the trial court's order denying Lowe's motion for a new trial. However, as explained in Division 3, we vacate Lowe's felony murder sentences and remand for resentencing on those counts because the trial court erred in sentencing Lowe on two counts of felony murder when there was a single victim.

1. This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight

---

[2] Counsel relied on our decision in *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975), which set forth criteria for determining whether joinder of offenses was proper. See Division 2, supra.

and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence shows the following. Powell and Lowe married in 2011. They lived in a home in Snellville, Gwinnett County, with three of Powell's six children. Powell had two handguns, which she kept in a safe.

Witnesses testified that Lowe's relationship with Powell was troubled, marred by Lowe's drug and alcohol abuse, his controlling behavior, and his lack of full-time employment. Powell had expressed frustration over having to support Lowe, who was routinely drunk. When Lowe was drunk, he often became violent and would strike Powell.

In 2015, Lowe got into an argument with Powell after Powell had accused Lowe of taking money from her. Lowe, who was intoxicated, threatened to kill her. He also punched her in the face. Powell's children heard the argument and saw that Powell was bleeding from facial injuries. One of the older children wrestled

4

Lowe outside and locked him out of the house. Police officers responding to the domestic violence call saw signs of a struggle and damage to furniture inside the master bedroom. When the police finally found and arrested Lowe for these offenses, he violently resisted arrest.

A friend of Lowe's testified at trial that, shortly before the shooting, Lowe confided to him that he was "stressed at home" and had gotten into a fight with Powell. Lowe believed that Powell was having an affair with a person who lived in their neighborhood and that she was about to leave him. Lowe said that he was "going to get" the man with whom Powell was allegedly having an affair.

Witnesses testified that, in mid-July of 2017, Powell told Lowe that she was contemplating divorcing him. The weekend before Powell was murdered, Lowe told Powell's sister that he was going to try to improve himself and that he wanted to throw a surprise birthday party for Powell. Powell, however, told Lowe that if he was not employed by July 20, 2017, she was leaving him. On July 20, Lowe was supposed to have a second interview for a job. According

to one of Powell's co-workers, Lowe called Powell on July 20 and told her that he had missed his second job interview. Powell, meanwhile, had gotten a new, better-paying job in Norcross and was in the process of moving and finding a new home. Powell's employment at the new job was set to start the week after July 20.

On July 20, one of Powell's co-workers dropped her at home shortly after 7:00 p.m. At 8:00 p.m., Powell telephoned her sister. Powell told her sister that she was in bed and that Lowe had just come home. Powell did not indicate that anything was wrong. Then, at 8:42 p.m., a neighbor's security camera showed Lowe leave the house, get into his car, and drive away. As he was walking to his car, Lowe told one of his neighbors: "It's over . . . you'll see later."  After Lowe left, no one else entered or exited the house until Powell's youngest child returned at 9:00 p.m.

When the child came home, he called out for Powell, but he received no answer. He stayed downstairs for the next two hours. When he went upstairs, he looked into the master bedroom and saw Powell lying in bed. He saw blood on the bedding around her head.

The child ran to get a neighbor, who returned with him to the house. The neighbor testified that Powell had an obvious head injury. He saw a shell casing on the floor next to the bed. He observed that Powell's hands and lower body were beneath the covers of the neatly made bed and that Powell was propped up on her pillows "as if she fell asleep watching TV[.]" The neighbor called 911 as he checked Powell for signs of life. But Powell was already dead. The Gwinnett County medical examiner determined that Powell died from injuries caused by a gunshot wound to the head. The medical examiner noted no other wounds on Powell's body.

Officers responding to the home found no sign of forced entry and no sign of a struggle in any part of the residence. They noted that Powell's body was in bed, as the neighbor had described it, with blood pooling beneath it. They found two shell casings on the bedroom floor and a bullet lodged in the headboard. Six days later, officers found Lowe's car. From inside it they recovered an empty beer can, denim clothing that tested positive for blood, and a clear glass tube that tested positive for cocaine.

Lowe testified at trial. He said that, when he got home, he went to the bedroom. Powell told him "I'm tired of your s***[;] I'm done," and then she pointed a gun at him. Lowe tried to wrestle it from her, but the gun went off as they struggled. Lowe claimed he was disoriented following the incident and left home without realizing that Powell had been shot. He admitted that he took the gun with him after the shooting and fled. He testified that he disposed of the gun by selling it to an unknown person. He admitted to abandoning his car. He also admitted to drinking, smoking marijuana, and to using and selling cocaine.

Finally, the State submitted evidence of prior domestic violence incidents by Lowe against women other than the victim. A 1990 conviction from New York was admitted, which showed that Lowe beat and kidnapped his former girlfriend and their child. Lowe also threatened to injure his former girlfriend with a screwdriver during the kidnapping. On August 11, 2005, Lowe was convicted of a domestic violence offense for putting his hands on the throat of another woman to whom he had been previously married.

2. In related claims of error, Lowe contends that: (a) the trial court erred in denying his motion to sever the 2015 charges for acts of domestic violence against Powell from the 2017 murder charges; and (b) that trial counsel's argument in support of Lowe's motion to sever amounted to ineffective assistance. For the following reasons, both claims of error are without merit.

(a) Lowe contends that the 2015 and 2017 charges were improperly joined and that the trial court abused its discretion in refusing to sever them. Lowe argues that the offenses were not part of a continuing scheme, that they occurred two years apart, and that the State only joined the offenses because they were similar in character and, as such, would only serve to prejudice the jury. The trial court denied Lowe's motion to sever because evidence of the 2015 incident between Lowe and Powell would have been admissible at the trial pursuant to Rule 404 (b) as other-acts evidence of prior difficulties between Lowe and Powell.

> This Court has held that a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character

because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique. Furthermore, where evidence of one charge would be admissible in the trial of another, a trial court does not abuse its discretion by denying a motion for severance.

(Citations and punctuation omitted.) *Simmons v. State,* 282 Ga. 183, 185 (4) (646 SE2d 55) (2007). See also *Carson v. State*, 308 Ga. 761, 765 (843 SE2d 421) (2020) ("Offenses have not been joined solely because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another." (citation and punctuation omitted)).

Given the evidence in the case, the trial court did not abuse its discretion in denying Lowe's severance motion because the charged offenses were similar, related acts of physical violence that were part of a continuing pattern of domestic abuse wherein Lowe, while intoxicated, lashed out at Powell when he felt that he had been wronged by her. And, had the 2015 and 2017 incidents not been tried

together, the trial court would have been authorized to admit evidence of the 2015 incident between Lowe and his wife at the murder trial as other-acts evidence demonstrating the parties' prior difficulties, Lowe's motive, and the lack of an accident.

> This Court has held that, under Rule 404 (b),[3] other-acts evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.

*Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017). "The major function of Rule 403 [as it relates to the admissibility of 404 (b) evidence] is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Smart v. State*, 299 Ga. 414 (2)

---

[3] OCGA § 24-4-404 (b) provides, in pertinent part:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

11

(b) (788 SE2d 442) (2016).

The evidence of the 2015 incident would have satisfied this three-part test. First, the evidence was relevant to issues other than Lowe's character, specifically the prior difficulties between the parties as well as Lowe's motive to commit the offenses charged. Pursuant to Rule 404 (b), evidence of a defendant's prior acts toward another person may be admissible in evidence "when the defendant is accused of a criminal act against that person, where the nature of the relationship between the defendant and the victim sheds light on the defendant's motive in committing the offense charged." (Citation omitted.) *Payne v. State*, 313 Ga. 218, 222 (1) (869 SE2d 395) (2022). The evidence presented in support of the 2015 charges showed that Lowe, while intoxicated, violently lashed out at Powell when he was angry with her. It showed the tumultuous nature of their relationship as well as Lowe's controlling nature, substance abuse, and erratic behavior toward her when under the influence of drugs and alcohol. As such, evidence of the 2015 incident would have been relevant as a prior difficulty to show motive. See id. See also

*Smart*, 299 Ga. at 419 (Although motive was not an element of the charged offenses, evidence of prior acts of violence was relevant under Rule 404 (b) to help the jury understand that the defendant used violence to control the victim.).

Second, the evidence of the 2015 offenses also would have satisfied Rule 403's requirement that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. "In weighing the probative value of other acts evidence, a court may consider a number of factors, including (1) prosecutorial need, (2) overall similarity of the other acts and the acts charged, and (3) the temporal remoteness of the other acts." *Thompson v. State*, 308 Ga. 854, 859 (2) (843 SE2d 794) (2020).

In this case, while evidence of Lowe's prior violent acts against Powell may well have had a prejudicial effect on the jury, that effect would not have substantially outweighed the probative value of the evidence in this case, as explained below. Prejudicial effect matters only if it's unfair prejudice. See *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is

13

inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that the rule permits exclusion." (citation and punctuation omitted)). Here, a number of factors would weigh in favor of admitting the 2015 acts as other-acts evidence. For example, although the forensic evidence undercut Lowe's claim that the gun went off while he and Powell struggled for control of it, there was no eyewitness testimony to rebut Lowe's account of how the shooting occurred. Thus, the other-acts evidence would serve the prosecutorial need of persuading the jury to reject Lowe's claim of accident because he had a motive to shoot Powell. We have held that evidence of motive may be relevant to counter claims of accident as well as self-defense. See *Harrison v. State*, 310 Ga. 862, 868 (3) (855 SE2d 546) (2021) ("Evidence that Harrison had a history of committing jealousy-fueled violent acts against a romantic partner thus had significant probative value in establishing that his conduct here was intentional and not accidental."); *Anthony v. State*, 298 Ga. 827, 833 (4) (785 SE2d 277) (2016) (Motive is "the reason that nudges the will and prods the mind to indulge the criminal intent,"

and was probative under the circumstances to rebut the defendant's claim of self-defense. (citations omitted)). Also, although there exists a two-year gap between the 2015 and 2017 acts, the significant similarity between those acts of domestic violence and the testimony concerning Lowe's history of controlling and abusive behavior toward Powell, shows that the 2015 acts are probative of his motive and not so remote as to be lacking in evidentiary value. See *Hounkpatin v. State*, 313 Ga. 789, 795 (a) (873 SE2d 201) (2022) (Given "the overall similarities between the offenses" the two-year gap between their commission did not reduce their probative value on the issue of intent.). For these reasons, it would have been within the trial court's discretion to find that the probative value of the 2015 other-acts evidence was not substantially outweighed by any unfair prejudice. See *Harrison*, 310 Ga. at 868 (3).

Third, and finally, given the testimony of several eyewitness to the 2015 acts, sufficient evidence existed to prove by a preponderance of the evidence that the 2015 acts occurred. See *Hounkpatin*, 313 Ga. at 797 (2) (a) (testimony about prior acts of

15

violence that the witness observed firsthand is sufficient to meet the third prong of the Rule 404 (b) admissibility test).

Given these circumstances, the trial court would have been authorized to admit evidence of Lowe's 2015 prior acts of domestic violence against Powell in a trial for her 2017 murder under Rule 404 (b). Consequently, the record demonstrates that the trial court did not abuse its discretion in denying the motion to sever offenses. See, e.g., *Carson*, 308 Ga. at 765 (2) (a); *Simmons*, 282 Ga. at 185 (4).

(b) Although Lowe's attorney moved to sever the 2015 offenses from the trial of the 2017 offenses based, in part, on controlling case law of this Court, Lowe argues that counsel was ineffective because he did not base his severance argument on the most recent ABA Standards concerning joinder of offenses, which is the 1980 version.[4]

---

[4] ABA Standard 13-3.1 (1980) provides:
    (a)Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to a severance of the offenses.
    (b) The court, on the application of either the prosecuting attorney or the defendant, should grant a severance of related

16

Lowe argues that severance was "mandated" under those standards and, had counsel based his severance argument on them, the trial court would have been required to sever the charges. Therefore, Lowe argues, counsel's failure to make this argument was clearly deficient, and that deficiency prejudiced him.

To prevail on his claim of ineffective assistance of counsel, Lowe must show that his counsel's performance was deficient, and that the deficient performance resulted in prejudice to him. See *Campbell-Williams v. State*, 309 Ga. 585, 588-599 (2) (b) (847 SE2d 583) (2020), citing *Strickland v. Washington*, 466 U. S. 668, 6874

offenses:
> (i) before trial, whenever severance is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
> (ii) during trial, whenever, upon the consent of the defendant or upon a finding of manifest necessity, severance is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.
> (c) When evaluating whether severance is appropriate to promote or necessary to achieve a fair determination of the defendant's guilt or innocence for each offense, the court should consider among other factors whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

17

(III) (104 SCt 2052, 80 LE2d 674) (1984). Thus, Lowe must first show that his trial counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Thornton v. State*, 307 Ga. 121, 126 (3) (834 SE2d 814) (2019). Second, he must prove that "there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. If Lowe fails to show either prong, it is unnecessary to examine the other and his claim fails. See *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

Here, Lowe cannot show that it was objectively unreasonable for his counsel not to rely on the 1980 standards in the motion to sever, because it is clear that relying on those standards would not have changed the outcome of the motion. There are at least three reasons why not. First, the 1980 ABA Standards that Lowe relies on are not binding Georgia precedent on the issue of joinder. Second, in *Dingler v. State*, 233 Ga. 462, 464 (211 SE2d 752) (1975), which Lowe's counsel relied on in his severance motion, this Court adopted as our rule to evaluate joinder the 1975 ABA Standards on Joinder

18

of Offenses, under which

> [t]wo or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both: (a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

(Punctuation omitted.) Id. at 463.[5] Lowe has not shown that argument based on the non-binding 1980 ABA standards would have prevailed over controlling authority from this Court, especially since a ruling in Lowe's favor would require a departure from the rule in *Dingler*. And, it is well settled that "[a] criminal defense

---

[5] In addressing Lowe's claim that counsel's severance argument was deficient, we cite to *Dingler* because it is the case that Lowe's trial counsel primarily relied on in his making his argument. We note, however, that at least one Justice of this Court has argued that *Dingler* was wrongly decided because, in adopting the ABA standards, this Court departed "from a long-tenured practice of leaving the question of severance to the sound discretion of the trial judge, except as otherwise provided by statute." *Cooper v. State*, 253 Ga. 736, 739 (325 SE2d 137) (1985) (Weltner, J., concurring specially). Also, OCGA § 17-8-4 (a) provides, in pertinent part: "When indicted for a capital felony when the death penalty is waived, or for a felony less than capital, or for a misdemeanor, such defendants may be tried jointly or separately in the discretion of the trial court." Nevertheless, this Court has continued to apply the criteria for joinder first set forth in *Dingler*. See, e.g., *Harris v. State*, 314 Ga. 238, 281 (4) (875 SE2d 659) (2022); *Hickman v. State*, 299 Ga. 267, 270 (2) (787 SE2d 700) (2016); *Harrell v. State*, 297 Ga. 884, 888 (2) (778 SE2d 196) (2015).

attorney does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." (Citation and punctuation omitted.) *Esprit v. State*, 305 Ga. 429, 438 (2) (c) (826 SE2d 7) (2019).

Third, the trial court's pre-trial ruling on Lowe's motion to sever shows that it considered *Dingler* and other applicable Georgia law in denying the motion to sever. For example, the trial court specifically cited to the reasoning in *Madison v. State*, 329 Ga. App. 856, 866 (3) (766 SE2d 206) (2014), where the Court of Appeals held that joinder was proper because the offenses constituted "prior difficulties" between the victim and the accused. That is, in Lowe's case, the charges were of the same or similar character and involved a pattern of prior acts of domestic violence against the same victim that would have been admissible in the trial regardless of whether they were formally charged. Further, as discussed above, Lowe's prior acts of domestic violence against Powell showed that he lashed out against Powell violently when he was intoxicated and when he

felt that he had lost control. These acts would have been admissible to show Lowe's motive. See *Smart*, 299 Ga. at 417-418 (2) (a).

Consequently, Lowe has failed to show that his trial counsel's performance was deficient in this regard. And, because Lowe has failed to show that counsel's performance was deficient, we need not address the second prong of the *Strickland* analysis. See *Green*, 291 Ga. at 580 (2).

3. Although Lowe's claims of error are without merit, we must vacate his felony murder sentences and remand this case to the trial court to correct a sentencing error. Counts 2 and 3 of the indictment both allege that Lowe committed felony murder against the same victim. Count 2 was predicated on aggravated assault, and Count 3 was predicated on possession of a firearm by a convicted felon. The State agrees that Lowe should not have been sentenced on both felony murder counts and that "the trial court is to use its discretion in resentencing [Lowe]." *Harris v. State*, 274 Ga. 835, 836 (2) (561 SE2d 73) (2002). Because Lowe murdered a single victim, he may be sentenced on either count of felony murder, but not both. See id.;

21

*Turner v. State*, 281 Ga. 487, 490 (3) (640 SE2d 25) (2007) (A defendant "may not be convicted on [two] felony murder counts when only one person was killed because such action improperly subjects [him] to multiple convictions and punishments for one crime. OCGA § 16-1-7 (a)." (citations omitted)). See also *McClellan v. State*, 274 Ga. 819 (1) (a) (561 SE2d 82) (2002); *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Accordingly, we must vacate the felony murder convictions and remand this case to the trial court for resentencing.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*