309 Ga. 542
FINAL COPY

S20A0874.  RODRIGUEZ v. THE STATE.

MᶜMILLIAN, Justice.

Appellant Elijah Rodriguez was convicted of felony murder in connection with the shooting death of Kevin Rivera, among other crimes.[1] The trial court denied Rodriguez's motion for new trial, and

---

[1] Rivera was killed on July 17, 2015. On August 2, 2017, a Gwinnett County grand jury indicted Rodriguez for the malice murder of Rivera (Count 1); felony murder of Rivera predicated on aggravated assault (Count 2); felony murder of Rivera predicated on aggravated battery (Count 3); conspiracy to possess with intent to distribute methamphetamine (Count 4); conspiracy to traffic in methamphetamine (Count 5); three counts of aggravated assault (Counts 6, 8, and 16); two counts of possession of a firearm during the commission of a felony (Counts 7 and 9); aggravated battery (Count 10); three counts of criminal gang activity (Counts 11-13); making false statements (Count 14); and influencing a witness (Count 15). Before trial, the State nolle prossed Count 14.

At a trial held from September 14 to 25, 2017, a jury found Rodriguez not guilty on Counts 1, 2, 6, 7, 8, and 9 and guilty on all other counts. The trial court sentenced Rodriguez to serve life in prison without the possibility of parole on Count 3, 30 years consecutive on Count 4, 20-year consecutive terms on Counts 10-13 and 16, and five years consecutive on Count 15, for a total sentence of life without parole plus 135 years. Count 5 was merged with Count 4 for sentencing.

Rodriguez filed a motion for new trial on September 27, 2017, which he amended through new counsel on March 29, 2019. Following a hearing, the trial court denied the motion (as amended) on May 29, 2019. Rodriguez filed a notice of appeal to this Court, and this case was docketed to the April 2020 term and thereafter submitted for a decision on the briefs.

he appeals, arguing that the evidence was insufficient to support his convictions for felony murder and the predicate felony of aggravated battery and that the trial court erred by denying his motion to sever. As explained in Division 3 below, we vacate Rodriguez's sentence for aggravated battery, which merges with felony murder by operation of law. We otherwise affirm Rodriguez's convictions.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed that Rodriguez, a member of the Sureños13 gang, was the "boss" of El Combo, a local subset of Sureños13.[2] Rivera was also a member of El Combo, and both men sold drugs. On July 16, 2015, Rodriguez and Brittney Wharton went to a hotel to visit Rodriguez's former roommate; Rivera was also at the hotel visiting the roommate. While there, Rodriguez and Rivera began to argue about the price of a large quantity of

---

[2] The State presented significant evidence of Rodriguez's criminal gang activity, including evidence of his involvement in seven gang-related incidents between April 2010 and October 2015; numerous Facebook posts and photographs depicting Rodriguez and other El Combo members wearing gang colors and flashing gang hand signs; photographs of Rodriguez's gang-related tattoos; and jail correspondence between Rodriguez and other gang members that contained numerous references to Sureños13 and El Combo.

methamphetamine that Rivera had recently stolen, with Rodriguez wanting Rivera to give him the drugs for free. Rivera punched Rodriguez, and Wharton intervened and pistol-whipped Rivera. Rodriguez and Rivera continued arguing, and Rodriguez pulled out his own handgun and fired a "warning shot" into the wall next to Rivera. Rodriguez then attempted to shoot Rivera in the stomach, but his gun jammed, so he and Wharton fled.

After leaving the hotel, Rodriguez told multiple people that he wanted to "get back at" Rivera and that Rivera would be "dead by midnight." Rodriguez and Wharton went to a gun store where Wharton tried to buy a nine-millimeter handgun for Rodriguez but was told there was a waiting period. Rodriguez then contacted Jose Macedo, a fellow Sureños13 member and gun supplier, and told Macedo that he needed a new gun to "ride on" Rivera.[3]

Rodriguez and Wharton went to an apartment that Rodriguez shared with Yasandra Bouloqne at the Ashford Jackson apartment

---

[3] Macedo testified that he understood this to mean that Rodriguez was mad and wanted to kill Rivera.

complex in Gwinnett County. Bouloqne testified that Rodriguez was "diabolical" and said he was going to kill Rivera. Bouloqne encouraged Rodriguez to reconcile with Rivera, and after texting with Rivera, Rodriguez told Bouloqne that he and Rivera planned to meet up that night to talk. Bouloqne also testified that a man she had never seen before came to the apartment that day and brought Rodriguez a black nine-millimeter handgun.

Macedo testified that he went to the apartment at around 11:00 p.m. and sold Rodriguez a shotgun; the two then smoked methamphetamine together. Macedo left the apartment about 30 minutes after he arrived. After Macedo departed, more friends came to the apartment before going out to a club. One friend testified that he overheard Rodriguez on the phone with Rivera around 12:40 a.m. and that he believed Rodriguez and Rivera intended to meet up later. Meanwhile, Rivera was at the apartment of Arian Stearns, who testified that she overheard Rodriguez and Rivera's conversation and heard Rodriguez say, "Sorry, but I'm going to have to kill you for how you disrespected me." The friends who were at

Rodriguez's apartment left for the club around 1:30 a.m.; Rodriguez, who stayed at the apartment, had not yet met with Rivera when his friends left.

At 2:04 a.m., a man who had been walking his dog placed a 911 call to report hearing shots fired about five minutes earlier and encountering a man "curled up" on the pavement of the Forest Vale apartment complex parking lot.[4] When police arrived at the parking lot, they found Rivera's body; he had been shot at least three times, and the medical examiner determined his cause of death to be a gunshot wound to the chest. Three nine-millimeter shell casings were found at the scene.

Two months later, in September 2015, Rodriguez and Wharton were pulled over by local police in Alabama while driving to deliver methamphetamine to one of Rodriguez's dealers. Rodriguez consented to a search of the vehicle, and the arresting officer found

---

[4] Evidence showed that a short path led from Rodriguez's apartment building to the parking lot where Rivera's body was found. An investigating detective testified that the distance between Rivera's body and Rodriguez's apartment building was 560 feet.

a two-ounce bag of methamphetamine, digital scales, bags, and two loaded nine-millimeter handguns. At trial, Wharton and several others testified that Rodriguez supplied them with methamphetamine that they later sold.

While in an Alabama jail, Rodriguez was interviewed by a Gwinnett County police officer about his possible involvement in Rivera's death.[5] Rodriguez's story changed several times during the course of the interview, but he eventually claimed that he was at a club when the murder occurred. Cell phone records showed, however, that Rodriguez's phone pinged two cell towers near the crime scene between midnight and 3:00 a.m. and the phone was never in the vicinity of the club where Rodriguez claimed he was.

In July 2017, while in the Gwinnett County Detention Center ("GCDC") awaiting trial, Rodriguez asked Wharton to change her testimony and instructed her to testify that Angel Banuchi, another El Combo member, was the person responsible for Rivera's death.

---

[5] Rodriguez became a person of interest after a woman, who testified at trial, reported to police that Wharton told her that Rodriguez killed Rivera. At trial, Wharton denied telling anyone that Rodriguez committed the murder.

Banuchi was also incarcerated at the GCDC, and Rodriguez approached him and demanded that he sign an affidavit stating that he lied to detectives during the investigation of Rivera's murder. When Banuchi refused, Rodriguez assaulted him. Investigators also found correspondence between Rodriguez and another El Combo member, Michael Delarosa-Pratts, in which Rodriguez asked Delarosa-Pratts to assault or kill Banuchi to prevent him from testifying at trial. The correspondence was replete with references to Rodriguez's gang affiliations and his status as the leader of El Combo.

Rodriguez's theory of defense at trial was one of mistaken identity, and he offered several alternative perpetrators for the jury's consideration. Among these, he posited that Miguel Vilches, the new boyfriend of Rivera's former girlfriend, was responsible for Rivera's murder. In support of this theory, Rodriguez presented evidence showing that Vilches shot Rivera in the chin approximately two weeks before the murder. Rodriguez also theorized that Rivera was simply the victim of a robbery gone badly or that Rivera was killed by the person he robbed of methamphetamine.

On appeal, Rodriguez contends that the evidence was insufficient to support his convictions for felony murder and the predicate felony of aggravated battery. Specifically, Rodriguez argues that because the evidence presented at trial was only circumstantial and no physical evidence tied him to the crimes, the State failed to exclude the reasonable hypothesis that Vilches was responsible for Rivera's death. This argument lacks merit.

When evaluating the sufficiency of evidence, this Court views the evidence presented at trial in the light most favorable to the verdict and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019). In cases based on circumstantial evidence, we likewise leave to the jury questions about the reasonableness of other hypotheses. See *Winston v. State*,

303 Ga. 604, 607 (814 SE2d 408) (2018).

As an initial matter, the fact that the State did not produce physical evidence in relation to Rivera's death does not mean the evidence was insufficient; "although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020) (citation and punctuation omitted). Indeed, the State presented strong circumstantial evidence of Rodriguez's guilt. The evidence showed that, about 12 hours before Rivera's death, Rivera and Rodriguez were involved in an altercation that ended with Rodriguez's failed attempt to shoot Rivera. After the altercation, Rodriguez told multiple people that he was going to kill Rivera, and another witness overheard Rodriguez tell Rivera on the phone that he was going to kill Rivera. In furtherance of this intention, Rodriguez made several attempts to obtain a weapon. Cell phone records showed that Rodriguez was at or near the crime scene, which was within walking distance of Rodriguez's apartment, during the time that Rivera was

killed, and Rodriguez provided investigators with multiple false alibis for his whereabouts at the time of the murder. Rodriguez also made several attempts to prevent Banuchi from testifying against him, including by physically assaulting Banuchi, and Rodriguez tried to pin the blame for Rivera's death on Banuchi. Given this evidence, "the jury was not required to find that [Rodriguez's] hypothesis was a reasonable one." *Walker v. State*, 308 Ga. 33, 35 (1) (838 SE2d 792) (2020) (citation and punctuation omitted). Accordingly, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Rodriguez was guilty of the aggravated battery and felony murder of Rodriguez.[6] See *Jackson*, 443 U.S. at 319 (III) (B). See also *Carter v. State*, 305 Ga. 863, 867 (2) (828 SE2d 317) (2019) ("[T]he fact that the evidence of guilt was circumstantial does not render it

---

[6] Rodriguez does not challenge the sufficiency of the evidence for his remaining convictions, but our independent review confirms that there was sufficient evidence to support those convictions. See *Jackson*, 443 U.S. at 319 (III) (B). We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___, ___ (4) (___ SE2d ___) (2020). The Court began assigning cases to the December term on August 3, 2020.

insufficient." (citation and punctuation omitted)).

2. Before trial, Rodriguez moved to sever the counts of the indictment so that there would be four separate trials with the counts divided as follows: the crimes related to Rodriguez's drug trafficking and gang activity that took place between December 26, 2013, and July 25, 2017 (Counts 4, 5, 11, and 12); the crimes related to the assault of Rivera on July 16, 2015 (Counts 6 and 7); the crimes related to Rivera's death on July 17, 2015 (Counts 1-3, 8-10, 13, and 14); and the crimes involving Banuchi that took place on July 16, 2017 (Counts 15 and 16). The trial court denied Rodriguez's motion. On appeal, Rodriguez concedes that severance was not mandatory because the charges were not joined solely on the ground that they were similar in nature. Nevertheless, he urges that the trial court should have exercised its discretion to sever the charges "in the interest of justice" and that its refusal to do so constitutes reversible error. We disagree.

"Whenever two or more offenses are joined for trial solely because they are of the same or similar character, a defendant has

an absolute right to sever." *Griffin v. State*, 292 Ga. 321, 322 (3) (737 SE2d 682) (2013). But where the joinder of charges is "based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique." *Carson v. State*, ___ Ga. ___, ___ (2) (a) (843 SE2d 421) (2020) (citation and punctuation omitted). In such a case, the trial court

> should grant a severance of offenses if it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each charge; in this regard, the question for decision is whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

*Harrell v. State*, 297 Ga. 884, 889 (2) (778 SE2d 196) (2015) (citation and punctuation omitted).

Here, the charged crimes all related to Rodriguez's ongoing involvement in gang activity and drug trafficking. Although the charges that specifically related to Rodriguez's gang activity and

drug trafficking occurred over a four-year period, the crimes against Rivera occurred over the course of about 12 hours and were directly related to Rodriguez's drug trafficking endeavors. The charges involving Banuchi arose from Rodriguez's efforts to prevent Banuchi from testifying against him on the Rivera charges. "Inasmuch as it is unlikely that the murder would have occurred but for the [drug] charges, the [drug] charges were inextricably bound to the murder and witness-influencing charges." *Morgan v. State*, 276 Ga. 72, 74-75 (3) (575 SE2d 468) (2003). Moreover,

> [t]here is no evidence in this case that the combined trial of the charges confused or misled the jury, and the verdict itself, including [Rodriguez's] acquittal for [malice murder, one count of felony murder, two counts of aggravated assault, and two counts of possession of a firearm], shows that the jury fully understood the law and evidence.

*Carson*, ___ Ga. at ___ (2) (a) (citation and punctuation omitted). Under these circumstances, we cannot say that the trial court abused its discretion by denying Rodriguez's motion to sever.

3. Although Rodriguez does not raise the issue on appeal, we

have identified a merger error in his sentencing.[7] "When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge, the conviction for the predicate felony merges into the felony murder conviction." *Brown v. State*, 302 Ga. 813, 816 (3) (809 SE2d 742) (2018) (citation and punctuation omitted). See also OCGA § 16-1-7 (a) (1). The crime of aggravated battery by shooting Rivera with a gun (Count 10) was the underlying felony for Rodriguez's felony murder conviction (Count 3), so it should have merged with the felony murder conviction for sentencing purposes. We thus vacate Rodriguez's conviction and sentence for the aggravated battery of Rivera.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

---

[7] This Court has the discretion to correct a merger error on appeal even when no party raises it. Most commonly, we exercise that discretion on our own initiative when we identify a merger error, like the one in this case, that harms the defendant. See *Dixon v. State*, 302 Ga. 691, 696-97 (4) (808 SE2d 696) (2017).

DECIDED AUGUST 10, 2020.
Murder. Gwinnett Superior Court. Before Judge Beyers.

*Maryann F. Blend*, for appellant.

*Daniel J. Porter, District Attorney, Lee F. Tittsworth, Daniel Sanmiguel, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.