316 Ga. 400
FINAL COPY

S23A0063.  PRICE v. THE STATE.

BETHEL, Justice.

A Dougherty County jury found Appellant Trevis Lavell Price
guilty of malice murder and other offenses in connection with the
deaths of L. C. Tumblin, Jr., and Dexter Covin.[1] On appeal,

---

[1] The crimes occurred on October 13, 2016. On May 1, 2019, a Dougherty
County grand jury re-indicted Appellant for two counts of malice murder
(Counts 1 and 2), two counts of felony murder (Counts 3 and 4), two counts of
aggravated assault (Counts 5 and 6), four counts of possession of a firearm
during the commission of a felony (Counts 7 through 10), possession of cocaine
with intent to distribute (Count 11), and possession of a firearm by a convicted
felon (Count 12). At a jury trial held from May 20 to May 31, 2019, Appellant
was found guilty of all counts. The trial court sentenced Appellant to serve life
in prison on Counts 1 and 2; five years each on Counts 7, 8, and 9, to run
concurrently with each other and consecutively to Counts 1 and 2; a split
sentence of 20 years in prison and 20 years on probation on Count 11, to run
concurrently with Counts 7, 8, and 9 and consecutively to Counts 1 and 2; and
five years on Count 12, to run concurrently with Counts 7, 8, and 9. Counts 5,
6, and 10 were merged for sentencing. The trial court purported to merge
Counts 3 and 4 for sentencing, but those counts were vacated by operation of
law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993).
On July 1, 2019, Appellant filed a motion for new trial, which he
amended through new counsel on July 2, 2020. The trial court denied the
motion, as amended, on July 26, 2022. On August 4, 2022, Appellant filed a
timely notice of appeal. The case was docketed to this Court's term commencing
in December 2022 and submitted for a decision on the briefs.

Appellant challenges the sufficiency of the evidence supporting his convictions for malice murder and the trial court's denial of his motion to sever the charge for possession of cocaine with intent to distribute. We affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed as follows. Around 1:30 a.m. on the night of October 13, 2016, officers with the Albany Police Department were dispatched to a residential address on a report of a possible shooting. When officers arrived, they observed one man lying in the front yard of the residence and another man lying on the front porch, both of whom had been shot. The man in the front yard, later identified as Covin, was non-responsive and not breathing. The man on the front porch, later identified as Tumblin, was moving and making noises; when asked by a responding officer who shot him, Tumblin responded, "Travis Price." The officers testified that Tumblin "was very scared, his voice was shaky, and it was a little hard to understand him." The officers further noted that Tumblin "was kind of hysterical," "seemed to be very faint," "was talking in a

2

very light voice," and "seemed to be in excruciating pain." Nevertheless, when the officers again asked Tumblin to identify the shooter, Tumblin repeated, "Travis Price." Officers later learned that Tumblin and Appellant were cousins. Tumblin was transported to the hospital, where, four days later, he succumbed to an infection caused by his wounds. Covin suffered a gunshot to the head, as well as to his arm and torso; he died as a result of his injuries.

After the shootings, eyewitness Fred Armstrong identified himself to the police. According to Armstrong, Covin owed him money for repairs Armstrong had made to Covin's vehicle, and on the night of the crimes, Covin asked Armstrong to meet him at the address where the shootings occurred to pick up the money Covin owed. When Armstrong arrived, he saw Covin's car with Covin and Covin's wife inside; he also saw a black Toyota Camry parked behind the residence facing the street with its headlights on. Armstrong observed Covin exit his car and approach the Camry. At that point, two men exited the residence, and one called out, "Who is this behind

my house this time of night?" Appellant,[2] who had stepped out of the Camry, responded, "It's your cousin." Appellant and Covin then got into the Camry together. Covin exited the Camry within two minutes and began walking back to his own car; before Covin could reach his car, however, Appellant exited the Camry, walked up behind Covin, and shot him. Appellant turned around and shot at the men on the front porch, then at Covin's wife, and then toward Armstrong's vehicle. Covin's wife sped off, followed by Armstrong.

Based on Tumblin's identification and the interview with Armstrong, police identified Appellant as a suspect in the shootings and, after learning that he had recently moved in with his parents, obtained a search warrant for Appellant's room at the residence. Crack cocaine, marijuana, a scale, and razor blades were recovered during the search. One officer testified that the cocaine, which had been divided into individual bags, was packaged for distribution and that the weight of the cocaine — approximately nine grams — was

---

[2] Armstrong was unable to identify Appellant as the shooter either when police showed him a photo lineup or at trial.

"not a normal user amount" and was "consistent with somebody possessing it with the intent to distribute it." The officer also testified that the brief interaction between Appellant and Covin in the Camry before the shooting was "consistent with performing a narcotics . . . transaction in the vehicle."

Appellant thereafter turned himself in to police and asked to speak with investigators. During the interview,[3] a video recording of which was played for the jury at trial, Appellant admitted ownership of the drugs found at his parents' house but denied any involvement in the shootings. Appellant further acknowledged that he used several names, including Trevis Price and Travis Price. Appellant also identified two cell phone numbers he used; police later subpoenaed records associated with those phone numbers.

At trial, the State introduced phone records showing that, from October 10 to October 13, several calls were placed between Appellant's phone and a phone associated with Covin, including a

---

[3] After receiving the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), Appellant executed a written waiver of rights.

call from Covin's phone to Appellant's phone approximately 15 minutes before the shootings. The records also reflected a series of text messages between Covin's phone and Appellant's phone in the days leading up to the shootings, the last of which was sent less than three hours before the crimes. In text messages exchanged the day before the shooting, Covin and Appellant negotiated and arranged for Appellant to purchase some "clean" from Covin at a price of $1,100; a police officer testified that "clean" is a "drug term" for "some really good cocaine."

On appeal, Appellant asserts that the evidence was insufficient to support his convictions for malice murder[4] because, he says, "undisputed inconsistencies and open questions" undermined the evidence against him. Specifically, Appellant complains about the absence of police body camera footage showing Tumblin identifying him as the shooter and faults the police for failing to interview Tumblin at the hospital before his death. Appellant further

---

[4] Appellant does not challenge the sufficiency of the evidence to support his other convictions.

highlights Armstrong's inability to identify Appellant as the shooter. Finally, Appellant suggests that law enforcement's investigation of the crimes was flawed because investigators failed to recover Appellant's phone and because they initially believed Appellant and Covin's drug transaction involved methamphetamine, rather than cocaine. These arguments are unavailing.

When evaluating the sufficiency of evidence, we view the evidence presented at trial in the light most favorable to the jury's verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence," *Yarn v. State*, 305 Ga. 421, 423 (2) (826 SE2d 1) (2019), and "we do not reweigh the evidence," *Dobbins v. State*, 309 Ga. 163, 165 (2) (844 SE2d 814) (2020). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's

case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Roberts v. State*, 305 Ga. 257, 259 (2) (824 SE2d 326) (2019).

Appellant's contention that purported inconsistencies in the evidence compromised the sufficiency of the evidence is meritless. Indeed, Appellant's argument goes to the weight and credibility of the evidence, and it is axiomatic that "[t]his Court does not reweigh evidence or resolve conflicts in testimony." (Citation and punctuation omitted.) *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010). Those determinations are reserved to the jury. See *Yarn*, 305 Ga. at 423 (2). Likewise, it is of no consequence that the State did not introduce a video recording of Tumblin's statement or the testimony of additional witnesses identifying Appellant as the shooter. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017) ("Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence."). The evidence recounted above was more than sufficient to authorize a rational

jury to find Appellant guilty beyond a reasonable doubt of malice murder of both Covin and Tumblin. See *Jackson*, 443 U. S. at 319 (III) (B).

2. In his second and final enumeration of error, Appellant asserts that the trial court erred by refusing to sever Count 11 — possession of cocaine with intent to distribute — from the remaining charges. We are not persuaded.

> When offenses are joined in a single indictment,
>
> a defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique.

(Citation and punctuation omitted.) *Lowe v. State*, 314 Ga. 788, 791-792 (2) (a) (879 SE2d 492) (2022). "If severance is not mandatory, it is nevertheless incumbent upon the trial court to determine whether severance [is] necessary to achieve a fair determination of [the defendant's] guilt or innocence as to each offense." (Citation and

punctuation omitted.) *Carson v. State*, 308 Ga. 761, 765 (2) (a) (843 SE2d 421) (2020). This inquiry requires the trial court to consider "whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." (Citation and punctuation omitted.) *Rodriguez v. State*, 309 Ga. 542, 547 (2) (847 SE2d 303) (2020).

Here, the trial court found that severance was not mandatory and, after determining that the facts of the case were "relatively straightforward" and that the charges against Appellant all stemmed from his involvement in drug dealing, denied Appellant's motion to sever.[5] On appeal, Appellant argues that severance was

---

[5] Appellant begins this section of his brief by asserting that the trial court erred by denying "several defense evidentiary motions," but this section includes factual and legal argument regarding only the denial of his motion to sever. Appellant goes on to vaguely complain that the trial court denied "two related defense motions concerning drug charges" against Appellant and "a defense motion to admit evidence from two witnesses who interviewed victim Tumblin in the hospital." And he criticizes the trial court for "permitt[ing] the [S]tate to introduce . . . evidence that . . . Tumblin identified Appellant as the shooter as a 'dying declaration.'" Beyond these generalized complaints, however, Appellant offers no cogent argument, citation of authority, or citations to the record to support his bare assertion that these rulings were

warranted because, he says, the admission of evidence relevant to Count 11, in conjunction with other unfavorable evidentiary rulings, was "highly prejudicial" and "devastating" to his defense and precluded "unbiased consideration by the jury on the more serious offenses[.]" But Appellant points to "no evidence . . . that the combined trial of the charges confused or misled the jury[.]" (Citation and punctuation omitted.) *Rodriguez*, 309 Ga. at 548 (2). And in light of evidence showing that the offenses arose from Appellant's drug-dealing activities, as well as the State's theory that the shootings resulted from a drug deal gone awry, we cannot say that the trial court abused its discretion by denying Appellant's motion to sever. See *Jackson v. State*, 314 Ga. 82, 88 (2) (874 SE2d 95) (2022) (no abuse of discretion in denying motion to sever where evidence showed that crimes, which occurred over course of several

---

erroneous. Thus, to the extent Appellant seeks to challenge these additional rulings, he is not entitled to review of those claims. See *Henderson v. State*, 304 Ga. 733, 739 (4) (822 SE2d 228) (2018) ("It is not this Court's job to cull the record on behalf of Appellant to find alleged errors, as appellate judges are not like pigs, hunting for truffles buried in briefs." (citations and punctuation omitted)); *Roberson v. State*, 300 Ga. 632, 636 (III) (797 SE2d 104) (2017) ("It is well established that the burden is on the party alleging error to show it by the record[.]" (citation and punctuation omitted)).

11

days, arose from appellant's "continuing course of criminal violence relating to his involvement in the drug trade"); *Rodriguez*, 309 Ga. at 547-548 (2) (severance not warranted where "charged crimes all related to [appellant's] ongoing involvement in gang activity and drug trafficking"); *Carson*, 308 Ga. at 765 (2) (a) ("Severance is generally not warranted where the crimes charged occurred over the same period of time and stem from a course of continuing conduct." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*

Decided May 31, 2023.

Murder. Dougherty Superior Court. Before Judge Marshall.

*Kathleen Strang*, for appellant.

*Gregory W. Edwards, District Attorney, M. April Wynne, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chelsea S. Harvey, Assistant Attorney General*, for appellee.