**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

## In the Supreme Court of Georgia

Decided: December 10, 2024

S24A1069. WESTON v. THE STATE.

BETHEL, Justice.

Adrian Darnyell Weston was convicted of malice murder in connection with the shooting death of Alex Tolbert.[1] On appeal, Weston challenges the sufficiency of the evidence supporting his conviction under OCGA § 24-14-6 and the trial court's denial of his motion for new trial on the "general grounds" under OCGA §§ 5-5-20 and 5-5-21. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the

---

[1] The crimes occurred on January 23, 2021. In March 2021, a Morgan County grand jury indicted Weston for malice murder, felony murder, and aggravated assault. At a November 2022 jury trial, Weston was found guilty of all counts. The trial court sentenced Weston to serve life in prison without the possibility of parole for malice murder; the remaining counts merged or were vacated by operation of law. Weston filed a timely motion for new trial, which he later amended. Following a hearing, the trial court denied the motion, as amended, on April 19, 2024. Weston filed a timely notice of appeal, and the case was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

evidence presented at trial showed as follows. On January 23, 2021, Tolbert was shot and killed at a Madison hotel. Police found Tolbert's body partially blocking the entrance to the hotel room where he was living at the time; he had been shot 11 times. Investigators collected fourteen .22-caliber shell casings and three bullets from the scene. During the investigation of Tolbert's murder, Weston was identified as a person of interest due to a history of conflict between the men. Specifically, in May 2019, Tolbert stabbed Weston in an altercation. Tolbert was arrested, indicted for aggravated assault, and reincarcerated for a probation violation related to a prior conviction. Tolbert was released from prison after serving the balance of his sentence, and in July 2020, shortly after his release, Tolbert visited the home of Jimmy Zanders, the uncle of Weston's then-girlfriend, where Weston frequently stayed. When Tolbert knocked on the door, Weston answered and chased Tolbert off the property. Weston called police about the incident and, according to the responding officer, was "fixated on the fact that he had been stabbed previously." Weston's then-girlfriend testified that

2

Weston spoke to her multiple times over a long period of time regarding the stabbing incident and his "aggravat[ion]" that Tolbert had not served any jail time in connection with the assault.

Subsequent investigation revealed that, on the day of the crimes, Weston was at the Zanders' home and was overheard on the phone telling his sister that he was going to kill Tolbert that night. Weston was observed later that evening leaving the Zanders' home with his gun inside a bookbag and walking down a trail. The trail connected the Zanders' home and the hotel at which Tolbert was shot, which are located approximately 400 yards apart. Weston spoke to his then-girlfriend on the night of the crimes and told her that "he did something, but he . . . didn't want to tell details about it" and that he "f**ked up." Officers learned that Weston had previously fired his gun near an outdoor firepit at the Zanders' home. Testimony at trial established that Weston was the only person who stayed at the Zanders' home who possessed a firearm. Four .22-caliber shell casings collected from the Zanders' yard were determined to have been fired from the same gun as the shell casings

3

recovered at the crime scene.

Weston fled the state shortly after the crimes. He was arrested in November 2021 while hiding in the attic of his sister's residence in Kansas. Weston phoned his sister from jail, telling her, "When I was caught, I really wish you hadn't talked to Mom. She knows it's over and done with now." He also told his mother to "[k]eep [her] f**king mouth shut."

On appeal, Weston first asserts that the evidence recounted above was insufficient to support his convictions as a matter of Georgia statutory law. Specifically, he complains that the evidence was circumstantial and did not exclude all reasonable hypotheses other than his guilt. See OCGA § 24-14-6. "The fact that the evidence of guilt was circumstantial does not render it insufficient." *Taylor v. State*, 313 Ga. 5, 8 (867 SE2d 88) (2021) (citation and punctuation omitted). Instead, as we have explained, "[w]hen a conviction is based on circumstantial evidence, the State must present sufficient evidence to 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" *Hooks v. State*, 318 Ga. 850, 853 (2) (b) (901

4

SE2d 166) (2024) (quoting OCGA § 24-14-6). Of course, "not every hypothesis is reasonable," and there is no requirement that the evidence "exclude every *conceivable* inference or hypothesis — only those that are reasonable." *Clark v. State*, 309 Ga. 473, 477 (847 SE2d 364) (2020) (citation and punctuation omitted; emphasis in original). It is for the jury to decide "[w]hether any alternative hypotheses are reasonable and whether the circumstantial evidence excludes any such hypotheses," and "we will not disturb the jury's findings on those questions unless they are insupportable as a matter of law." *Wilson v. State*, 319 Ga. 550, 553 (1) (905 SE2d 557) (2024) (citation and punctuation omitted).

At the outset, we note that Weston has failed to identify any specific alternative hypothesis that, in his estimation, the State failed to disprove. Instead, Weston centers his argument on the assertion that the State failed to present enough persuasive or direct evidence to establish his guilt and vaguely implies that some unidentified person was responsible for Tolbert's murder. To that end, Weston makes much of inconsistencies in the testimony of

various witnesses, but "it is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury." *McCoy v. State*, 315 Ga. 536, 543 (a) (883 SE2d 740) (2023) (citation and punctuation omitted). Weston's complaints about the State's failure to present certain types of evidence, including fingerprint or DNA evidence connecting him to the crime scene, eyewitness testimony identifying him as the shooter, or a confession, are equally unavailing because "there is no requirement that [the State] prove its case with any particular sort of evidence," so long as the evidence presented is "competent." *Rodriguez v. State*, 309 Ga. 542, 546 (1) (847 SE2d 303) (2020) (citation and punctuation omitted). Deferring to the jury on these issues of evidentiary weight and credibility, we conclude that the evidence presented at trial was sufficient as a matter of Georgia statutory law concerning circumstantial evidence to support Weston's conviction for malice murder.

At trial, the jury heard testimony that Weston, who was armed with a gun, was observed shortly before the crimes walking toward

the hotel at which Tolbert was shot and killed. Shell casings recovered at the crime scene were fired from the same gun as shell casings recovered at the Zanders' residence where Weston frequently stayed, and testimony at trial reflected that Weston was the only person to have possessed and fired a gun at the Zanders' residence. Weston made incriminating statements to several people both before and after the crimes. Additionally, Weston fled the state after Tolbert's killing and concealed himself in his sister's attic in an attempt to avoid arrest, and there was a history of animosity between Weston and Tolbert. This evidence was legally sufficient to exclude every *reasonable* hypothesis other than Weston's guilt.[2] See OCGA § 24-14-6; *Rodriguez*, 309 Ga. at 546 (1) (circumstantial evidence supporting a murder conviction included appellant's statements to multiple people that he would kill the victim, evidence

---

[2] Weston also argues that the evidence was insufficient to support the felony murder and aggravated assault counts. That argument is moot, however, because Weston was not sentenced on those counts; the felony murder count was vacated by operation of law and the aggravated assault count merged into the malice murder conviction for sentencing. See *Frazier v. State*, 309 Ga. 219, 224 (1) n.7 (845 SE2d 579) (2020).

placing appellant at or near the crime scene within walking distance of his apartment, and evidence of a prior altercation between appellant and the victim); *Jenkins v. State*, 313 Ga. 81, 88-89 (3) (868 SE2d 205) (2022) (flight from scene of crime, resistance to arrest, and concealment generally is circumstantial evidence of guilt). Accordingly, this claim fails.

2. Weston also argues that the trial court abused its discretion by denying his motion for new trial on the general grounds, again focusing on the circumstantial evidence of his guilt. See OCGA §§ 5-5-20 (authorizing grant of new trial if the trial judge concludes that the jury's verdict is "contrary to evidence and the principles of justice and equity") and 5-5-21 (authorizing grant of new trial if the trial judge concludes that the jury's verdict is "decidedly and strongly against the weight of the evidence"). When a defendant raises the general grounds in his motion for new trial, the trial court must "exercise a broad discretion to sit as a 'thirteenth juror'" and "consider some of the things that he cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence,

8

the credibility of witnesses, and the weight of the evidence." *Hinton v. State*, 312 Ga. 258, 262 (1) (c) (862 SE2d 320) (2021) (citation and punctuation omitted). On appeal from the denial of such a motion, this Court reviews "whether the trial court exercised its discretion as the thirteenth juror, but the decision to grant a new trial on the general grounds is vested solely in the trial court and is not subject to our review." *Weems v. State*, 318 Ga. 98, 102-103 (3) (897 SE2d 368) (2024).

Here, in its order denying Weston's motion for new trial, the trial court recognized its duty to sit as the thirteenth juror and expressly indicated that it had considered all the evidence presented at trial, including any conflicts in the evidence, the weight of the evidence, and the credibility of the testifying witnesses. Based on that review, the trial court concluded that the State proved Weston's guilt beyond a reasonable doubt as to each element of the crimes of which he was convicted. "The court therefore ruled on the motion based on its own independent review of the trial record and found no discrepancy between the jury's conclusions regarding the weight

of the evidence and the credibility of the witnesses and the court's own views of those matters." *Williams v. State*, 307 Ga. 689, 691 (1) (b) (838 SE2d 314) (2020). And because the trial court properly exercised its discretion under OCGA §§ 5-5-20 and 5-5-21, Weston's argument "is otherwise not subject to review by this Court."[3] *Weems*,

---

[3] Weston does not argue that the evidence was insufficient to support his conviction as a matter of federal constitutional due process under *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). In the past, we often reviewed the sufficiency of the evidence as a matter of constitutional due process when considering an appellant's general-grounds claim. See *King v. State*, 316 Ga. 611, 616 (2) n.8 (889 SE2d 851) (2023). But see, e.g., *Caviston v. State*, 315 Ga. 279, 282-284 (1) (882 SE2d 221) (2022) (limiting general-grounds analysis to evaluating whether trial court exercised its discretion); *Butts v. State*, 297 Ga. 766, 772 (3) (778 SE2d 205) (2015) (same). But more recently, many of us have begun to question the propriety of including a *Jackson* sufficiency analysis within a general-grounds analysis and have expressed interest in reexamining it in a case where the issue is properly presented. See *King*, 316 Ga. at 616 (2) n.8 ("[M]any of us question whether it is proper for this Court to import *Jackson* into an appellate review of the general grounds (or to otherwise rely on *Jackson* as part of that analysis)."). See also, e.g., *White v. State*, 319 Ga. 367, 374 (2) n.8 (903 SE2d 891) (2024). Because Weston's argument in this regard is confined to the nature and weight of the evidence of his guilt but does not concern the constitutional sufficiency thereof, we have conducted our analysis to address the argument raised, without delving into unargued issues. Compare generally *Davenport v. State*, 309 Ga. 385, 392-399 (4) (846 SE2d 83) (2020) (announcing this Court's discontinuation of deciding federal constitutional sufficiency issues sua sponte in non-death penalty cases and noting that "it is almost always a better course to decide the appeal the parties bring us"); *Scoggins v. State*, 317 Ga. 832, 837 (1) (a) n.6 (896 SE2d 476) (2023) (noting that, post-*Davenport*, "instead of considering all conceivable sufficiency-related issues, we limit our consideration to only the argument that [the appellant] actually makes").

318 Ga. at 103 (3). See also *Brock v. State*, 319 Ga. 765, 772 (2) (b) (906 SE2d 739) (2024) ("[T]he merits of a trial court's discretion on the general grounds are not subject to our review — that decision is vested solely in the trial court." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*